CHENOWETH, RESPONDENT, *v.* GREAT NORTHERN RY. CO., APPELLANT.

(No. 3,491.)

(Submitted March 29, 1915. Decided April 12, 1915.)

[148 Pac. 330.]

*Personal Injuries—Master and Servant—Railroads—Excessive Damages—New Trial—Codefendants—Peremptory Challenges —Notice of Appeal—Service—Inconsistent Pleadings.*

Appeal—Modified Judgment.
    1.   Where the district court on motion for new trial modified the judgment in a personal injury action, by scaling the verdict, with the consent of plaintiff, the judgment as modified superseded the original one, and an appeal from the latter did not lie.

Personal Injuries—Codefendants—Contribution.
    2.   As between codefendants charged with negligence in which both participated, resulting in personal injuries to plaintiff, the doctrine of

contribution does not apply in favor of the one against whom judgment was rendered.

[As to contribution between persons liable for negligence, see note in 16 Am. St. Rep. 254; Ann. Cas. 1913B, 938.]

Same—Codefendants—Dismissal as to One—Parties—Notice of Appeal—Service.

3.    After dismissal of one of two defendants on motion for nonsuit, the defendant so dismissed was no longer a party to the action, and service of notice of appeal upon it by the other defendant was unnecessary.

Same—Codefendants—Peremptory Challenges.

4.    Under *Mullery* v. *Gt. Northern Ry. Co.,* ante, p. 408, the contention that each of two corporation defendants in a personal injury action was entitled to four peremptory challenges of jurors held without merit.

Same—Peremptory Challenges—Waiver.

5.    Where codefendants, though antagonistic to each other, do not separately attempt to exercise their right to peremptorily challenge the jurors in turn with the plaintiff, they waive their right in this respect.

Inconsistent Pleadings—Rule.

6.    To make pleadings objectionable as inconsistent, they must be so far contradictory that if the allegations supporting one theory are true, those supporting the other must of necessity be false.

Personal Injuries—Excessive Damages—New Trial.

7.    *Held,* that damages allowed a carpenter's helper, twenty-eight years of age, capable of earning $1,000 per year, to the amount of $15,000 after reduction by the court, on motion for new trial, from a verdict of $25,000, for the loss of his right arm, where the jury were neither advised of his life expectancy nor the cost of an annuity equal to his earnings, and were confined by the instructions to a consideration of the pain and suffering incident to the injury and the depreciation of his earning capacity, were so excessive as to evince passion or prejudice, and therefore to require a new trial.

Excessive Verdicts.

8.    In determining whether a verdict is so excessive as to show passion or prejudice on the part of the jurors, the time devoted to the consideration of the case by them, though not decisive, may be taken into account.

[As to when verdict for personal injuries is excessive, see note in Ann. Cas. 1913A, 1361.]

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Jay H. Chenoweth against the Great Northern Railway Company and the Anaconda Copper Mining Company. From a judgment for plaintiff and an order denying it a new trial, defendant railway company appeals. Reversed.

*Messrs. Veazey & Veazey,* for Appellant, submitted a brief; *Mr. I. Parker Veazey, Jr.,* argued the cause orally.

*Mr. S. A. Anderson, Mr. W. F. O'Leary* and *Mr. James A. Walsh,* for Respondent, submitted a brief; *Mr. Walsh* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought against the Great Northern Railway Company and the Anaconda Copper Mining Company to recover damages for personal injuries sustained by the plaintiff while working in the smelter at Great Falls. A motion for nonsuit by the mining company was sustained at the close of plaintiff's case.

As against the railway company, the complaint charges negligence in coupling a locomotive to empty cars at the place where plaintiff was engaged in the performance of the duties of his employment, in such a careless and violent manner that the cars were driven eastward and upon the plaintiff, injuring his right arm to such an extent that amputation was necessary. It is also charged that it was the duty of the railway company to give plaintiff due warning that the cars were about to be moved, and in failing in this respect the company was negligent. The answer of the railway company denies the material allegations of the complaint and pleads contributory negligence and assumption of risk. In selecting a jury the court called upon plaintiff and defendants to challenge peremptorily, and plaintiff exercised his first. The mining company then dismissed a juror, and this procedure was followed upon the call of the court for the second, third and fourth challenges. The railway company then advised the court for the first time that it was unable to agree with its codefendant as to jurors to be excused, and demanded that it be permitted to exercise four peremptory challenges. Upon the refusal of this demand it requested to be permitted to excuse a particular juror then in the box, but this request was likewise denied. A verdict for $25,000 in favor of plaintiff and against the railway company was returned and judgment entered thereon. Upon consideration of a motion for a new trial,

the court made a conditional order for a reduction of the amount of the verdict to $15,000, and plaintiff having complied with this order, the judgment was modified accordingly and a new trial denied. The railway company has attempted to appeal from the judgment for $25,000, and has appealed from the judgment for $15,000 and from the order denying it a new trial. Plaintiff has moved to dismiss the appeals on the ground that the mining company was not served with the notice of appeal.

1. The judgment for $25,000 was not in existence at the time [1] the appeals were taken. It had been superseded by the modified judgment for $15,000, and the attempt to appeal from the judgment as originally entered is therefore abortive.

2. We are unable to understand upon what theory the rail- [2] way company could avail itself of the exception reserved to the order dismissing the mining company from the case, even if it desired to do so. The doctrine of contribution has no application to a case of this character. (*Tanner* v. *Bowen,* 34 Mont. 121, 115 Am. St. Rep. 529, 9 Ann. Cas. 517, 7 L. R. A. (n. s.) 534, 85 Pac. 876; *Rand* v. *Butte Electric Ry. Co.,* 40 Mont. 398, 107 Pac. 87.) The defendants were not charged as joint tort-feasors in the sense of the term employed in *Forsell* v. *Pittsburgh & Mont. Copper Co.,* 38 Mont. 403, 100 Pac. 218, but were charged with negligence in which both participated. In such an action the failure to fix liability upon one, does not militate against plaintiff's right to recover against the other. (*Golden* v. *Northern Pac. Ry. Co.,* 39 Mont. 435, 18 Ann. Cas. 886, 34 L. R. A. (n. s.) 1154, 104 Pac. 549.) If the railway [3] company was guilty of negligence which proximately caused plaintiff's injury, the fact that the mining company was or was not negligent could not enhance or diminish the railway company's liability. Having secured its dismissal upon motion for nonsuit, the mining company was not thereafter, an adverse or any other kind of party to this action. Its interests could not be prejudicially affected by a reversal as to the railway company, and service of notice upon it was therefore unnecessary.

3. The decision in *Mullery* v. *Great Northern Ry. Co., ante,* p. 408, 148 Pac. 323, is decisive against appellant's claim that it should have been allowed four separate peremptory challenges. If the railway company and the mining company were antagonists, that fact should have been brought to the attention of the court when peremptory challenges were first called for. By remaining silent until the plaintiff and the mining company had exercised the statutory number of challenges, the railway company acquiesced in the selections made by its codefendant. If entitled to separate challenges at all, it could exercise them only by alternating with plaintiff (*State* v. *Sloan,* 22 Mont. 293, 56 Pac. 364), and its failure to challenge in turn with the plaintiff constituted a waiver of its right. (*State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169.)

4. A special demurrer for ambiguity and uncertainty in the complaint was not interposed, and these defects cannot now be urged upon our attention. (Rev. Codes, sec. 6539.) While the two theories upon which plaintiff predicated his right to recover are somewhat inconsistent, they are not so far contradictory that if the allegations supporting one are true, the allegations supporting the other must of necessity be false; and this is the standard by which inconsistent pleadings are to be measured. (*Johnson* v. *Butte & Superior C. Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057; *Hauswirth* v. *Butcher,* 4 Mont. 299, 1 Pac. 714.)

5. It is insisted that the damages are excessive and appear to have been awarded under the influence of passion or prejudice, and with this we agree. Of necessity, there cannot be any hard-and-fast rule established for determining the maximum compensation to be allowed for a personal injury, and the courts are therefore ever reluctant to interfere. But while the amount of recovery in the first instance is committed to the wise discretion and unbiased judgment of the jurors, the Codes have provided for a review by the trial and appellate courts. Section 6794 specifies seven grounds for any one or more of which a new trial may be had. The fifth is: "Excessive damages,

appearing to have been given under the influence of passion or prejudice.'' In addition to the remedy by new trial, there is available to the defeated party the right to insist that the amount of the verdict be reduced by the court. This principle has become so firmly established in the jurisprudence of our country that it may well be said to be a part of the American common law. It is a serious question whether a court should ever resort to this latter remedy, except in a case where the amount of the excess can be accounted for by resort to mathematical calculation based upon some error in the standard adopted by the jury. If the amount of the excess cannot be ascertained by some rational method other than the mere *ipse dixit* of the court, a new trial should be granted; for under our judicial system the rights of parties are submitted to the fair and impartial judgment of jurors, not to their passions or prejudices. Whenever it becomes apparent that either or both of these impulses influenced the amount of a verdict, it is the duty of the court to see that a tribunal created to secure justice is not perverted from its purpose and made an implement of oppression.

The object of section 6794 is to secure to litigants fair and impartial trials of their controversies. The statute is silent with respect to the means by which passion or prejudice may be shown. The courts have generally contented themselves with a comparison of the amount of the particular verdict with the extent of the injuries shown. The jurors are not permitted to impeach their verdict by disclosing the proceedings in the juryroom, from which passion or prejudice might be inferred (*State v. Beesskove,* 34 Mont. 41, 85 Pac. 376) ; and unless the amount of the verdict, when taken into consideration, with the surrounding facts and circumstances ordinarily available to the defeated party discloses the presence of these elements, then subdivision 5 of section 6794 is a dead letter. In the present instance we are relieved of much of the embarrassment usually surrounding the solution of like questions. The issues were narrowed in the lower court to very restricted limits. In the complaint the plaintiff alleges that at the date of his injury he was twenty-

eight years old, able-bodied and capable of earning $1,000 per year.  In the instructions submitted the jurors were confined to a consideration of two elements of damages only: pain and suffering incident to the injury, and impairment of earning capacity.  The life expectancy of plaintiff was not shown; the mortality tables were not used; the cost of an annuity equal to plaintiff's earning capacity was not before the jury.  There was not any medical expert testimony, and no evidence of any injury other than the loss of the arm.  Since neither party objected to instruction 15 referred to above, we are not called upon to determine whether it is correct.  It became the law of the case binding upon the parties and the jury.  The elements of personal disfigurement; the inconvenience in going through life in the maimed condition in which the plaintiff unfortunately finds himself, or his unfavorable situation in competition with others in attempting to enter a new field of employment, could not have been considered by the jury under the instruction above.  Neither were the jurors called upon to weigh conflicting opinions of expert witnesses as to accompanying injuries, nor to consider the many difficult questions which ordinarily surround a case of this character.  They were confined in their deliberations to ascertaining an amount which would reasonably compensate plaintiff for the pain and suffering incident to his injury, and for the depreciation of his earning capacity.  The plaintiff's own testimony precludes allowance of any considerable sum on account of pain and suffering; and substantially the entire award of $25,000 must be accounted for, either upon the theory that plaintiff's earning capacity has been diminished to an extent commensurate with that amount, or that the jurors were swayed by the influence of passion or prejudice.  Plaintiff is a barber by trade.  He has done some work as a pipe-fitter, and at the time of his injury was working as a carpenter's helper. Twenty-five thousand dollars invested at the modest rate of four per cent will yield an annual income equal to plaintiff's earnings, leaving to his heirs at the time of his death the entire principal sum intact.  Any higher interest rate would only accentuate the

disproportion between the amount of this verdict and fair compensation for the impairment of plaintiff's earning capacity. Assuming that plaintiff's capacity to earn has been destroyed altogether—and the evidence does not warrant such conclusion—still the amount returned by the jury is out of all proportion to the injury when viewed from the standpoint of compensation for loss of earning capacity, and far in excess of any verdict ever sustained for a like. injury to a man similarly situated, so far as disclosed by the reported cases called to our attention. These cases need not be reviewed. They are useful only as indicating a consensus of opinion as to what constitutes fair compensation for a personal injury under a given set of circumstances. Reference may be had to *Cleveland, C., C. & St. L. Ry. Co.* v. *Hadley,* 16 Ann. Cas. 1, [170 Ind. 204, 16 L. R. A. (n. s.) 527, 82 N. E. 1025]. The Workmen's Compensation Act, passed by the fourteenth legislative assembly, and effective July 1 of this year, fixes a maximum compensation of $2,000 (exclusive of the cost of certain medical attendance, *etc.*) for the loss of "one arm at or near shoulder." This provision is not conclusive nor very persuasive upon the question of reasonable compensation. It indicates in a measure, at least, the views of a majority of the legislators upon the subject, and, when in operation, will control in all cases subject to the Compensation Act.

While the time devoted to a consideration of this case by the jury is not decisive, we do not share the opinion of some courts [8]   that it cannot be considered at all. It is worthy of note, we think, as indicating the existence of some extraneous influences, that though this case presented some difficult problems for solution, and though the trial court submitted twenty-nine instructions, some of which of necessity were involved and demanded painstaking consideration, the jury returned this verdict for $25,000 within thirty minutes from the time the case was submitted to them. The trial court determined that the verdict is excessive and plaintiff has acquiesced in that conclusion by offering to remit $10,000 from the amount. We think it impossible, under the circumstances, to account for the excess

—whatever it may be—upon any rational theory consistent with the theory that the jurors exercised that calm and deliberate judgment demanded in the trial of jury cases. If the facts of this case do not disclose that the jurors were influenced by passion or prejudice, we think it impossible to make out a case which falls within the purview of subdivision 5 of section 6794 above.

If, then, passion and prejudice swayed the jurors, there was not a fair and impartial trial, and, instead of reducing the verdict, the lower court should have granted appellant's motion, to the end that the case may be once submitted to the unbiased judgment of jurors selected to administer justice between these parties.

The attempted appeal from the judgment as originally entered is dismissed; the motion to dismiss the appeals is overruled; the judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.