**MISSOURI, K. & T. RY. CO. v. EDMONDS.**

No. 8732—Opinion Filed July 30, 1918.

(174 Pac. 1052.)

**1. Appeal and Error — Instructions — Review—Absence of Request.**

Where the trial court in its charge to the

jury correctly defines the duty of the jury as to the issues involved, a cause will not be reversed for failure to charge upon specific theories of defense claimed to arise from the evidence, in the absence of requested instructions as to such theories of defense.

### 2. Trial—Instructions—Issues.

In a damage suit against a railway company, where the answer consists of a general denial and a plea of contributory negligence, there being no plea of fraud, the defendant is not entitled to an instruction upon a theory that the plaintiff fraudulently caused an injury to himself for the purpose of lodging an action against the railway company.

### 3. Carriers — Railway Mail Clerks—Relation to Carrier—"Passenger."

A United States railway mail clerk, traveling in a railway mail car and engaged in the performance of his duties as such clerk, stands in the relation of a "passenger" to the railway company, and the company owes to such mail clerk so engaged the same degree of care owed to regular passengers.

### 4. Carriers—Personal Injuries—Evidence.

Where the plaintiff brings suit against a railway company for the loss of an eye resulting from an injury caused by the alleged negligence of such railway company, and there are facts in evidence from which the jury may reasonably find that the injury caused the loss of the eye, it is not necessary, in order to sustain a verdict for the plaintiff, to prove by expert testimony that the infection necessitating the removal of the eye was caused by the injury; there being other evidence from which the jury may reasonably infer such fact.

### 5. Damages—Mitigation.

The burden is upon the railway company, in an action against it for damages for personal injury, to show that the plaintiff's damages could have been reduced or minimized by the use of ordinary care on his part, and, in the absence of evidence showing that the damages caused by the negligence of the railway company were augmented because of the failure of the plaintiff to use ordinary care to minimize the same, the defendant is not entitled to an instruction as to plaintiff's duty to use ordinary care to minimize the damages.

### 6. Damages—Personal Injury—Extent.

A verdict for $3,000 as damages for the total loss of an eye by a young man engaged as a railway mail clerk, under the evidence in the instant case is not excessive.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Charles H. Edmonds against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Everest & Campbell, for defendant in error.

Opinion by STEWART, C. The plaintiff, Charles H. Edmonds, brought action against the defendant, Missouri, Kansas & Texas Railway Company, and recovered damages in the sum of $3,000, for injuries alleged to have been caused by the negligence of the defendant and resulting in the loss of plaintiff's left eye. The answer consisted of a general denial and a general plea of contributory negligence. The defendant in its brief summarizes the error under the following propositions: First, the trial court erred in not fully charging the theories of defense; second, the defendant did not owe to the plaintiff the highest degree of care in regard to the condition of the mail car, but owed the duty of ordinary care; third, there was no competent evidence to justify the recovery for the infection and loss of plaintiff's eye; fourth, it was the plaintiff's duty to use ordinary care to minimize his damages, and he could not recover for any damages suffered by his failure to do so, and the jury should have been so instructed. The defendant also filed supplemental brief, urging that the damages awarded are excessive.

Under the first proposition, the defendant insists that the evidence shows that the plaintiff, because of financial embarrassment, took advantage of the injury to his eye, and brought about the removal of the same in order that he might collect an accident insurance policy in the sum of $1,000, payable on the loss of an eye, and in order that his claim for damages against the defendant could be increased. The railway company also introduced evidence for the purpose of showing that in times past the plaintiff had been afflicted with a sexual disease, and that the germs probably left in the system might have caused the infection resulting in the loss of the eye. Other evidence was advanced for the purpose of showing that the infection was brought about by chemicals which it is contended the plaintiff used after the injury to relieve the pain resulting therefrom. It seems that the railway company had no definite line of defense, but merely cast here and there for some theory upon which to escape liability. The only instruction requested which purports to set forth the law as to any specific theory of defense is found in defendant's requested instruction No. 11, which reads as follows:

"You are instructed that if you find there is any evidence tending to show that the plaintiff's cause of action against the defendant is fraudulent, you have a right to consider that evidence, and to consider in that connection what motive may have induced him to attempt a fraudulent action against the defendant."

For the purpose of considering the refusal of the court to give instruction above quoted, as well as for the purpose of considering other errors urged, a resume of the material facts in evidence is proper.

There is evidence to show that the plaintiff, at the time of the injury, was engaged in his occupation of United States railway mail clerk on one of the mail cars used by the defendant upon its line of railway; that, in the course of his duties, he attempted to shut the door of the mail car, which door had been permitted by the company to become defective and difficult to operate; that a heavy wire screen being a part of the equipment of the mail car, had, through the negligence of the defendant, become broken at the bottom, and that, because of the defect in the door, plaintiff, in attempting to shut the same, fell, the end of the broken wires striking his face and the ball of his left eye, causing an injury from which the eye afterwards became infected. The plaintiff was coming into Oklahoma City, which was the end of his run, at the time of the injury. On arriving home, he attempted to call his family physician, who happened to be temporarily out of the city. He applied some temporary treatment to relieve the pain, and, thinking that there was no serious injury, he made another trip in the line of his duty to Parsons, Kan., during which trip the eye did not cause him any great trouble, there being, however, an occasional burning sensation. Returning on the 17th day of May, he found that the condition of the eye had grown worse, and he sought the services of Dr. Dixon of Oklahoma City under the impression that he was calling in Dr. Dicken, the physician and surgeon of the railway company. The plaintiff was placed in the Wesley Hospital at Oklahoma City, and there is testimony by Dr. Dixon that, while there, he complained of great pain, and insisted on the injured eye being removed. Dr. Dixon says that he advised against such a course, and prescribed a treatment for the eye. By agreement, the plaintiff, returned to his home, where he says he followed the treatment. Not improving, on the 21st day of May he was placed in the University Hospital at Oklahoma City under the treatment of Dr. Buxton, an eminent eye surgeon of the state. Dr. Buxton advised him that he would never see out of

his injured eye, but that he had better wait a few days to ascertain if the globe of the eye could be saved. Finally Dr. Buxton advised that, on account of infection which might, by sympathy, affect the other eye, it would be best to remove the infected eye, which was afterwards done. At the time and before the operation, Dr. Dicken, the railway physician, in company with the claim agent of the defendant railway, was present, and it was then and there stated by the representatives of the railway company that it was the desire of the railway company to have the eye taken out, if there was any danger to the other eye; they also making a request to be furnished the eye after removal for the purpose of pathological examination. The plaintiff consented to the request, and the eye removed was afterwards examined by Dr. Lee, a pathologist employed by the railway company for such purpose. It is admitted by the witnesses for the defendant that the examination of the eye confirmed the diagnosis as to the necessity of the removal, all agreeing on that point. There is no evidence that the infection was caused by another agency than the circumstances attending the original injury. However, the pathologist selected by the railway company testified that on first examination of the removed eye he was led to suspect that the infection was caused by a sexual disease, but he said that he made a further examination, and did not find any germs of such disease, though there might have been germs present which he did not discover. At last he testified that he did not know whether or not any of such germs were present. Dr. Buxton testified to the effect that there was no evidence of any other infection than that which could have been caused by the injury: that the infection was caused from the outside, and that there was no evidence of possibility of invasion of bacteria from any other source; that the condition of the eye showed that the same had been injured from the outside. There is considerable evidence that the defendant was financially embarrassed. He owed bills which he could not meet, and had given checks on the bank which had not been paid. At the time of the trial he was in jail, having been convicted of a felony in connection with his embarrassed financial condition. All of these things, according to the record, were continuously throughout the trial impressed upon the jury, but notwithstanding the unfortunate and adverse circumstances under which the plaintiff appeared at the trial, the jury, after hearing the testimony, unanimously returned a verdict in his favor for the full amount asked, which verdict the court ap-

proved, rendering judgment accordingly.

With much vigor, the defendant contends that the circumstances in evidence are sufficient to show that the plaintiff fraudulently caused the removal of his eye, and therefore cannot recover for damages caused by such removal. There is no allegation of fraud on the part of the defendant; and, if there were such an allegation, we do not think the refusal of the court to give special instruction No. 11 was error. We do not think that there is any evidence upon which the jury might have based a reasonable finding that the plaintiff deliberately caused the removal of his eye, and there is no evidence to support a fraudulent action on his part. We may also say that the instruction is too general, and does not set forth a state of facts which, if proven, would amount to fraud, nor show what the duty of the jury would be in case of a finding that the plaintiff's cause of action was fraudulent. As before suggested, there was no other requested instruction, purporting to set forth any of the many theories of defense insinuated but hardly established by the defendant. The court was not called upon, under the circumstances to set forth in the instruction the nauseating details injected into the evidence as to any sexual disease with which the plaintiff at one time may have been afflicted. We think that instruction No. 8, given by the court, was fair, and fully protected every possible right of the defendant with reference to the cause of the removal of the eye, which instruction reads:

"Even though you should find from the evidence that plaintiff's eye became so infected that it had to be removed, and you also find that defendant's car was in a defective condition as claimed by the plaintiff, yet if you further find that the injury to or condition of the plaintiff's eye was due to some cause other than the defective car, your verdict should be for the defendant."

The second proposition urged by the defendant, that the defendant did not owe the plaintiff the highest degree of care in regard to the condition of the mail car, but owed the duty only of ordinary care, is not meritorious. The court instructed the jury that, under the law, a United States railway mail clerk engaged in the performance of his duties stands in the relation of a passenger of the railway company and that the company owes to such mail clerk so engaged the same degree of care owed to passengers. This is a correct statement of law, and is so well established that it needs no argument or authorities to support the pronouncement thereof.

The third proposition, to the effect that there is no competent evidence to justify recovery for the infection and loss of plaintiff's eye, will now be considered. The defendant urges that, in order to prove grounds for such recovery, it was the duty of the plaintiff to have propounded a hypothetical question to Dr. Buxton, or to some other expert setting forth all of the facts and calling for expert's opinion. It is well settled that expert testimony is only persuasive, and that when there are facts and circumstances in the evidence from which the jury may reasonable infer a particular result or condition, it is not absolutely necessary to have expert testimony. The members of the jury are entitled to the presumption of being intelligent, and when all the facts in evidence are connected so as to reasonably support any finding necessary to be made, hypothetical questions may be dispensed with. Such questions are valuable, almost necessary, in some cases. Even if necessary in the case at bar, the evidence shows that Dr. Buxton was intimately and thoroughly acquainted with the case and its history, with the condition of the eye and the pathological examination made, and his testimony shows that the injury was caused from the outside and that the infection was a result of the injury. All of the circumstances in the case, as shown by the testimony, are so connected as to sustain the necessary finding by the jury that the condition was caused by the injury. Dr. Lee, the pathologist, testified that an injury caused by a blow would not cause infection, but he qualified his testimony by saying that the blow itself would not cause infection unless the infecting material was carried on the particular instrument with which the blow was made. It is a matter of common knowledge that metals and other substances many times carry bacteria from which infection may result. It is also true that, after the inflicting of an injury not originally infectious, infection may set up from other sources. There is no evidence in this case to show that the infection came from any other source, but, in case such were true, it would be necessary for the defendant to show in any event that the infection resulted from the negligence of the plaintiff. This has not been done. It cannot be said that there was no evidence reasonable tending to support the verdict of the jury, and, such being true, we are concluded thereby.

Under proposition No. 4, the defendant calls our attention to special instructions Nos. 13 and 14, requested by the defendant and refused by the court, the substance of which instructions was to the effect that it was the plaintiff's duty to use ordinary care

to minimize his damages, and that he could not recover for any damages suffered by his failure to do so. In general instruction No. 8 given by the court, quoted above. the jury are advised that, if they find that either the injury or the condition of plaintiff's eye was due to some other cause than the defective car, their verdict should be for defendant, which instruction sufficiently protects the rights of defendant, under the evidence. In our opinion, there is no evidence from which the jury might reasonable infer that the plaintiff's injuries were augmented by any negligence on his part. Before such an instruction would be authorized, there should be some substantial evidence introduced to support the same, and the burden is on the defendant to show a state of facts authorizing such requested instruction. The defendant, though calling into its service leading experts of this state, offered no testimony to show that the plaintiff could have reduced the damage by any acts of his, or that the loss of the eye could have been prevented by the plaintiff. We think that the court's instructions were as favorable to the defendant as the evidence warranted. It is true that there is some evidence that the plaintiff used cocaine to relieve the pain in his eye, but none of the learned physicians and pathologists have testified that cocaine could have caused the infection. The undisputed evidence is that the infection rendered the removal of the eye necessary, and, while it may or may not be true that cocaine is injurious to the eye, we do not understand that it is a germ carrier, and that the use of it results in infection. In measuring the plaintiff's duties, we must remember that he was not an expert; that he was an ordinary man, unskilled and unused to the practice of medicine or of surgery. His acts must be measured according to his standards and according to the light before him, not according to the standards of the learned and the skilled. There is no question in our mind from the evidence but that the plaintiff did all that was reasonably necessary to be done, and there is no evidence that his negligence, if any, caused the removal of the eye and the consequent damage.

We have carefully examined the charge given by the trial court, and have come to the conclusion that the same is a model of brevity and excellence, impartially protecting the rights of each of the parties. Each statement of law made is cogent, to the point, and incapable of misleading the jury. The verdict and judgment being fully supported by the evidence, the cause will not be reversed.

As an afterthought the defendant filed an additional brief urging that the damage awarded is excessive. The defendant preserved this point in the motion for a new trial, and has the right to urge the same in this court, but it is not necessary to enter into a lengthy discussion, or to cite authorities to show that a verdict of $3,000 for the total loss of an eye by a young man engaged as a railway mail clerk, under the evidence in this case, is not excessive.

Finding no prejudicial error, the judgment is affirmed.

By the Court: It is so ordered.