## ST. LOUIS, I. M. & S. RY. CO. v. TRUE.

No. 8627—Opinion Filed Nov. 19, 1918.

Rehearing Denied Dec. 24, 1918.

(176 Pac. 758.)

(Syllabus.)

1. **Commerce—Engaged in "Interstate Commerce" — Federal Employers' Liability Act.**

In an action for damages for personal injuries by an employe against an interstate carrier, the true test of whether the plaintiff was engaged in 'interstate commerce," at the time of his injury within the meaning of the federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657-8665), is: Was he engaged in interstate transportation or in work so closely related to it as to be practically a part of it?

2. **Same.**

Applying this test to the case at bar, the court holds that the work the plaintiff was doing at the time he was injured was too remote from interstate commerce to be practically a part of it.

3. **Appeal and Error—Question Not Raised Below—Jury Trial—Review.**

Where the railway company did not ask to go to the jury on the question whether the plaintiff was engaged in interstate commerce at the time of his injury, but raised the question by a demurrer to the petition and a request for a directed verdict, both based upon the ground that it appeared as matter of law that he was so engaged, this court will not review the contention made for the first time on appeal that the defendant was entitled to have that question submitted to the jury, if it appears that the only ruling requested was properly denied.

4. **Master and Servant—Personal Injury — "Defect"—Foreign Law.**

A railway company required an employe to use one of its motorcars designed for use in daylight and not equipped with lights, for the purpose of transporting a crew of its workmen to and from their work after dark. While plaintiff was so engaged he was injured by the car running into a cow lying between the rails upon the track, which could not be seen owing to the darkness and the alleged negligence of the defendant in failing to furnish proper lights for the car, which on request of plaintiff the defendant had promised but failed to supply. Held, that the plaintiff's injuries were caused by a defect in the motorcar within the meaning of the statute of the state of Arkansas providing that common carriers by railway shall be liable for injuries to employes caused by reason of defect, which defect is due to its negligence, in its cars, motors, etc. (citing Words and Phrases, First Series, Defect; see, also, Second Series, Defect.)

5. **Trial — Requested Instructions—Given Instructions.**

Instructions requested by defendant and refused by the court examined, and held that in so far as they state correct principles of law applicable to the theory upon which the cause was tried, they have been substantially covered by the instructions given by the court upon its own motion.

6. **Evidence—Weight and Sufficiency—Civil Action.**

The plaintiff in a civil action is not required to prove his cause beyond any reasonable doubt; if he makes it appear to be more probable that the injury came in whole or in part from the negligence alleged than from any other cause, that is sufficient.

7. **Damages—Personal Injury—Consequent Blindness—Evidence.**

Record examined, and held, that the evidence reasonably tends to support the findings of the jury that the injuries received by the plaintiff were the direct cause of his subsequent total blindness.

8. **Computation of Time—Statute.**

Section 5341, Revised Laws 1910. provides: "The time within which an act is to be done shall be computed by excluding the first day, and including the last; if the last day be Sunday, it shall be excluded."

9. **Time—Excluding Day—Limitations.**

The injuries were received on the 28th day of September, 1912, and the action was commenced on the 28th day of September, 1914; the 27th day of said month falling on Sunday. Held. that the action was not barred by the two-year statute of limitations.

10. **Release — Action for Personal Injury—Consideration.**

A release executed by an employe of a railway company, reciting that he had received certain injuries, and that in consideration of re-employment for such time only as may be satisfactory to the company, and in order that said railway company may be assured that it will not hereafter be annoyed by any suit for damages for said injuries, he releases said company from all claims for damages for such injuries. is without consideration and void, where it appears that such employe was, at the time it was executed, in the employ of the company

**11. Trial—Instructions—Construction as a Whole.**

Instructions given by the court and excepted to by the defendant examined, and held that, when considered together with all the instructions given, they state the law applicable to the case with substantial accuracy.

**12. Damages—Personal Injury — Excessive Damages.**

Finding no reversible error in the actions of the trial court hereinbefore considered, and observing nothing in the record indicating that the verdict rendered was induced by passion or prejudice, we are unable to say that it is excessive solely on account of the amount of recovery allowed.

Error from District Court, Rogers County; W. J. Campbell, Judge.

Action by H. T. True, Jr., against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thos. B. Pryor and Wm. L. Curtis, for plaintiff in error

F. E. Riddle and Wm. Stacey, for defendant in error.

KANE, J. This was an action for damages for personal injuries commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.

Hereafter, for convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court. Upon trial to a jury there was a verdict for the plaintiff in the sum of $20,000, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The grounds for reversal relied upon by counsel for the defendant, arranged in slightly different order by the court, are summarized in their brief as follows:

(1) Defendant's demurrer to plaintiff's petition was well taken and should have been sustained for the reason that the petition discloses upon its face that the defendant at the time of his alleged injury was engaged in interstate commerce and that his right to recover for same, if such right existed, was governed by the provisions of the federal Employer's Liability Act (Act April 22, 1908 c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657-8665]), and that therefore the laws of the state of Arkansas, upon which the plaintiff's action was based, do not apply.

(2) The court erred in admitting in evidence certain sections of the 1911 Session Laws of the state of Arkansas, and in permitting the plaintiff to amend his reply so as to plead section 5 of No. 88 of the 1911 Session Laws of the state of Arkansas.

(3) The court erred in refusing to give instructions numbered 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23 requested by the defendant.

(4) The court erred in giving instructions numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 19, and 20 given upon its own motion.

(5) The testimony in the case is not sufficient to, and does not, disclose such a state of facts as to show (except as a matter of speculation) that the condition of the plaintiff's eyes was approximately the result of the motorcar collision, of which he complains.

(6) The verdict of the jury is excessive and appears to have been given under the influence of passion and prejudice.

The facts necessary to present the principal grounds for reversal, presented for review, may be briefly stated as follows:

On September 28, 1912, the defendant was a common carrier, engaged in interstate commerce, one of its lines of railroad running through Lexi and Barton, two towns in the state of Arkansas situated five miles apart. One of the roundhouses of the defendant was located at Lexi, and the men employed therein resided at Barton. At the time the plaintiff was injured, he was in the employ of the defendant as division foreman at this roundhouse; his general duties consisting of directing the labor and superintending the making of all necessary "running repairs" on defendants' engines and cars taken temporarily off the road and sent to the roundhouse for that purpose, which engines and cars were used interchangeably in either interstate or intrastate commerce. The work in the roundhouse required both a night and a day shift of men, and, in addition to plaintiff's general duties, he was required to convey both shifts to and from their work, on a gasoline motorcar. Under the rules of the company, the day shift left the roundhouse at 6 o'clock p. m., and it was plaintiff's duty to be there at that time and convey them in the motor-driven car furnished by the defendant to Barton, and there get the night crew and bring them back to the roundhouse in time for them to go to work at 7 o'clock p. m., after which his duties for the day ended. While plaintiff was nearing Lexi

with the night crew on the car, they ran upon a cow laying on the track, which could not be seen, owing to the darkness, and the alleged negligence of defendant in failing to furnish proper lights for the car, which, on request of plaintiff, defendant had promised but failed to supply.

The particular work which the crew was to perform after arriving at Lexi was not shown, except that they were required to do whatever might be found to be done in the roundhouse and yards under the direction of their foreman; and whether they were expected to work on an engine or car used wholly in interstate commerce, or whether they were to work on an engine or car used wholly in interstate commence, or whether they would work on implements used both in intrastate and interstate commerce, the evidence does not disclose.

As to the nature and extent of his injuries, the plaintiff alleged, in substance: That immediately after the collision he was taken to a hospital where, among other injuries, it was discovered that a small stone about the size of a grape had been imbedded in his skull; that, although at the time this injury was not regarded as serious, almost immediately after its infliction he commenced to experience severe pains through his head, and especially on the right side thereof passing through his right temple into his right eye; that said pains progressively continued to grow more frequent and more severe until the 9th day of May, 1914, at which time he lost completely and permanently the sight of his right eye; that about ten days thereafter as a result of said pains, which were caused by and were the direct and proximate result of said collision, he lost completely and permanently the sight of his left eye, since which date he has been permanently totally blind. Where the statement of additional facts may be found necessary for the consideration of any particular assignment of errors, they will be made when such assignment is reached for consideration in due order.

The first question presented for review, Was the plaintiff engaged in commerce between the states at the time of his injury, within the meaning of the Employers' Liability Act? has been often under consideration by both the state and federal courts. Whilst the federal Supreme Court has now established an authoritative test for the determination of this question, the application of this test to the varied circumstances of each case is not entirely free from difficulty, as an examination of the authorities will amply disclose. It would not be useful to discuss at length the numerous decisions in which this question has received consideration, for no case exactly resembles another, and slight differences of fact may be of great importance. In view of this, we will confine our citation of authorities to the decisions of the Supreme Court of the United States and will notice only such of these as we find helpful in applying the established general rule to our case.

The approved test of employment in such commerce, as stated by the Supreme Court, is:

"Was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" Shanks v. Railroad Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

Applying this test, the Supreme Court has held that the requisite employment in interstate commerce exists where a car repairer is replacing a drawbar in a car then in use in such commerce (Walsh v. New York, N. H. & H. R. Co., 223 U. S. 132, 32 Sup, Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44); where a fireman is walking ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade (Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann Cas. 1914C, 172); where a workman about to repair a bridge regularly used in interstate transportation is carrying from a tool car to the bridge a sack of bolts needed in his work (Pederson v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153); where a fireman having prepared his engine for a trip is walking across adjacent tracks on an errand consistent with his duties (North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159).

And, while not departing from this test, the Supreme Court also has held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars all loaded with intrastate freight from one part of the city to another (Illinois C. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163); where an em-

ploye in a colliery operated by the railroad company is mining coal intended to be used in the company's locomotives moving in intrastate commerce (Delaware, L. & W. Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397) ; where the plaintiff is altering the location of a fixture in a machine shop (Shanks v. Delaware, L. & W. Co., supra) ; where the plaintiff was engaged in transporting coal in a wheelbarrow to defendant's repair shop. where both interstate and intrastate instrumentalities were repaired, for the purpose of heating the shop (Illinois Central R. R. Co. v. Cousins, 241 U. S. 641, 36 Sup. Ct. 446, 60 L. Ed. 1216).

It may be noticed in passing that, in the Cousins Case, the Supreme Court of the state was of the opinion that, inasmuch as the heating of the shop was indispensable to making repairs of any kind, the work Cousins was doing was so directly and closely connected with interstate commerce as to form a part of it. The federal Supreme Court, however, in each of these cases, held that the work in which the plaintiff was engaged at the time he was injured was too remote from interstate transportation to be practically a part of it. Now applying the test to the case at bar, it seems clear to us that the plaintiff was not engaged in interstate commerce at the time he received his injuries. The precise work he was engaged in was transporting workmen from the place of their residence to the roundhouse of the company. The workmen, it is true, were employed generally for the purpose of making running repairs upon cars and engines used in both interstate and intrastate commerce and were on the way to perform such duties as might be assigned to them under direction of their foreman. But even so, the work which the plaintiff was actually doing, like that of the coal miner in the Yurkonis Case, the mechanic in the Shanks Case, and the laborer in the Cousins Case, was too remote from interstate commerce to be practically a part of it.

In connection with this assignment of error, it is also contended for the first time that—

"If there should be any question as to whether or not the plaintiff in this case was engaged in interstate commerce at the time of his injury, the defendant was at least entitled to have had that question submitted to the jury as a question of fact."

Chicago, R. I. & P. Ry. Co. v. Bond, 47 Okla. 161, 148 Pac. 103; C., R. I. & P. Co. v. Felder. 56 Okla. 220, 155 Pac. 529; P. & N. T. Ry. Co. v. Rosenbloom, 240 U. S. 439, 36 Sup. Ct. 390, 60 L. Ed. 730 ; and N. Y. C & H. R. Ry. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298—are cited in support of this proposition. A sufficient answer to this is that the defendant did not ask to go to the jury on the question whether the deceased was engaged in interstate commerce, but raised the question by a demurrer to the petition and a request for a directed verdict, both of which were based upon the ground that it appeared as a matter of law that he was so engaged. As the only ruling requested was properly denied, it is too late to ask this court to review this question. now raised for the first time. L. & N. Ry. Co. v. Parker, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119.

The accident which caused plaintiff's injury occurred in the state of Arkansas. and he bases his right to recovery on a violation by the company of the sections of the 1911 Session Laws of that state, referred to in defendant's next assignment of error. The parts of these sections, to wit, sections 2 and 5 of No. 88, necessary to notice, provide in substance as follows:

That every common carrier by railroad shall be liable for all damages to any person suffering injury while he is employed by such carrier, when such injury results in whole or in part by reason of any insufficiency of roadbed and tracks, or structures or machinery and equipment, or lights and signals in switching and terminal yards, or rules and regulations and of number of employes to perform the particular duties with safety to themselves or their coemployes, or any other insufficiency: or by reason of any defect. which defect is due to its negligence, in its, cars, engines, motors, appliances, machinery, track, roadbed, boats, works. wharves, or other equipment; that if an employe of such common carrier shall receive any injury by reason of any defect in any of its cars, engines. motors, etc., such common carrier shall be deemed to have had knowledge of such defect before and at the time such injury is sustained, and, when the fact of such defect shall be made to appear in the trial of any action against any such common carrier for damages on account of such injuries so received. the same shall be prima facie evidence of negligence on the part of such common carrier.

The first contention made by counsel for defendant under this assignment of error is that inasmuch as the evidence conclusively shows that motorcars, such as the one in use at the time of the accident, are designed

for use during the daylight hours and are constructed originally without headlights, headlights not being essential for the purpose for which they are designed, it cannot be said that the injury suffered by the plaintiff was caused by a defect in the motorcar, or that the defect was due to the negligence of the company, within the meaning of the statute pleaded.

It is quite true that cars of this class are almost exclusively used during daylight hours, and, of course, when so used a headlight is not an essential part of their equipment and its absence would not constitute a defect in the motorcar. But it seems to us a different rule ought to apply where, as in the case at bar, the defendant takes a motorcar designed for use in daylight only, and requires an employe to use it after dark, without lights, for a purpose for which it was not originally designed. The evidence shows that the plaintiff began the use of this motor car in August, 1912; that during the month of September the days had grown so short that it was impossible for him to make his return trip with the night shift during daylight; that, realizing the danger of operating the car after dark, the plaintiff made requisition of the storekeeper for a headlight, which request was refused; that he then, in a personal conversation with Mr. French the master mechanic and his superior officer, explained the danger and renewed his request that lights be furnished; that Mr. French promised to do his best to have the car equipped with lights and requested plaintiff to continue to operate the car in the meantime without lights. The master mechanic also testified that it was dangerous to operate this car after night without lights. It is true that the same witness testified that the plaintiff was not specifically required to operate the car after dark. but this testimony is qualified by his further statement that the plaintiff was required to use the car for the particular work in which he was engaged at the time of the injury, between the hours of 6 and 7 in the morning and 6 and 7 in the evening, and that the plaintiff had no authority to change the time during which he used the car.

In 2 Words and Phrases, 1931, we find that a "defect" may be the result of some inadaptation of an instrumentality to its purposes; and that when machinery was perfect of its kind and in good repair, but unsuitable for the purpose for which it was used, it was a "defect" within the meaning of a statute providing that employers shall be liable for defects, etc. Geloneck v. Dean Steam Pump Co., 165 Mass. 202, 43 N. E. 85. Similarly, we think it may be reasonably said that the plaintiff suffered his injuries by reason of a defect in the motorcar which was created by the unsuitableness of the purpose for which it was being used by the company.

As the question raised by the latter part of this assignment of error is not much stressed by counsel in their brief and we are unable to perceive how any substantial right of the defendant could be injuriously affected by the action of the trial court complained of, even if we assume that it was erroneous, we do not deem it necessary to give it extended notice.

The next assignment of error deals with the action of the trial court in refusing to give numerous instructions requested by counsel for the defendant. Many of these requested instructions merely present for review the questions already considered herein. in somewhat different form; whilst others deal with the doctrine of assumed risk and contributory negligence as applicable to causes arising under the federal Employers' Liability Act; others raise the question of the sufficiency of the evidence to show that the loss of eyesight of the plaintiff was the result of the injury received; and others whether the action was commenced within the time prescribed by the two-year statute of limitations; and others the sufficiency of a certain release executed by the plaintiff to relieve the defendant from liability.

Without noticing in detail the requested instructions falling within the first two of the foregoing classes, it is sufficient to say of them that we have examined them all very carefully and are of the opinion that, in so far as they state correct principles of law applicable to the theory of the case at bar, as hereinbefore outlined, they have been substantially covered in the instructions given by the court upon its own motion. This is all that is required.

The most serious question presented by this assignment is the sufficiency of the evidence to show that the injuries received by the plaintiff were the cause of his subsequent total loss of sight. Of necessity, opinion evidence was largely resorted to upon this point, and, as usual, there was a sharp conflict in the testimony of the experts for the respective sides. This evidence as it appears in the record is quite voluminous, and no useful purpose could be served by setting it out in detail in this opinion or commenting on it at any great length. It is sufficient to say of it that we have examined it all very carefully and are satisfied that

the finding of the jury in favor of the plaintiff is reasonably sustained by the evidence.

The plaintiff in a civil action is not required to prove his cause beyond any reasonable doubt; if he makes it appear to be more probable that the injury came in whole or in part from the negligence alleged than from any other cause, that is sufficient. St. Louis & S. F. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973; St. Louis & S. F. Co. v. Hart, 45 Okla. 659, 146 Pac. 436.

Instruction No. 22 requested by the defendant and refused by the court relates to the applicability of the two-year statute of limitations. The record shows that the accident occurred on September 28, 1912, and that the action was commenced on the 28th day of September, 1914. The calendar introduced in evidence shows that September 27, 1914, fell on Sunday. Section 5341, Revised Laws 1910, provides:

"The time within which an act is to be done shall be computed by excluding the first day, and including the last: if the last day be Sunday, it shall be excluded."

In view of this statute, it seems quite clear that the action was commenced within two years, and therefore was not barred by the statute of limitations.

Requested instruction No. 23 relates to the sufficiency of the release executed by the plaintiff to exonerate the plaintiff from liability. The undisputed evidence shows that, after an absence from work of four or five days on account of his injuries, the plaintiff resumed his former employment, without any protest from defendant and without signing a release or a contract of re-employment. After the plaintiff had been at work for about six weeks, the defendant presented a release, which he was required to sign on pain of being discharged from its services. This release recited, in substance, that the plaintiff had received certain injuries, and that, in consideration of re-employment for such time only as might be satisfactory to the company, he released said company from all claims for damages for said injuries. It is true that there is considerable conflict in authorities as to whether or not re-employment constitutes sufficient consideration to support a release of this character. Many respectable authorities hold that in the absence of fraud, duress, or mistake, re-employment is a sufficient consideration to support such a contract. But that is not the precise question presented by the facts in the case at bar. Although the release herein was designated a contract of re-employment, it was not so in fact. The plaintiff, as we have seen, had not been discharged from the services of the company, nor had he quit work voluntarily except for a temporary absence of five or six days immediately after the injury, after which he voluntarily returned and continued his work for a period of six weeks before he was required to sign the releases. In these circumstances the courts seem quite uniformly to hold that such a contract, not being a contract of re-employment, is void for want of consideration. Purdy v. Rome W. & R. Co., 125 N. Y. 209, 26 N. E. 225, 21 Am. St. Rep. 736; M., K. & T. Ry. Co. v. Smith, 98 Tex. 47, 81 S. W. 23, 66 L. R. A. 741, 107 Am. St.. Rep. 607; Potter v. Detroit, G. H. & M. Ry. Co., 122 Mich. 179, 81 N. W. 245.

On the next assignment of error it is only necessary to say that we have examined the instructions given by the court to which counsel made objections, and find that, when they are considered together with all the other instructions given, they state the law applicable to the case with substantial accuracy.

Finding no reversible error in the actions of the trial court hereinbefore considered, and observing nothing in the record indicating that the verdict rendered was induced by passion or prejudice, we are unable to say that it is excessive solely on account of the amount of recovery allowed.

The evidence showed the plaintiff to be a young man, 26 years of age, and an expert mechanic who at the time of his injury was receiving $135 per month. The mortuary table introduced in evidence shows his expectancy of life to be 38 years. During that period he would earn at his then rate of wages alone $68,400. This would be sufficient to support the verdict rendered on a compensatory basis alone. But when, in addition to this, the pain endured by the plaintiff and the inconvenience and humiliation he will necessarily suffer from going through life totally blind is considered, it cannot be said that the verdict returned is excessive.

Section 6005, Revised Laws 1910, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

And, of the errors assigned of the class mentioned in the statute which we have not

specially noticed it is sufficient to say that, after a careful examination of the entire record, it does not appear to the court that there were any errors of this sort which have probably resulted in a miscarriage of justice or which constitute a substantial violation of any constitutional or statutory right of the defendant.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur, except TURNER, J., who was absent and not participating.