VESEL, Respondent, *v.* JARDINE MINING CO., Appellant.

(No. 8280.)

(Submitted October 13, 1943.   Decided April 18, 1944.)

[147 Pac. (2d) 906.]

*Mr. Clarence E. Wohl* and *Mr. Vilroy C. Miller,* for Appellant, submitted an original and a reply brief; *Mr. Wohl* argued the cause orally.

58

60

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action for damages for an injury to plaintiff's eye. The defendant, a mining company, was operating under Plan 3 of the Workmen's Compensation Act, Rev. Codes 1935, sec. 2990 et seq. The plaintiff at the time of the accident was an underground miner operating a power driven drill in defendant's mine at Jardine and was 58 years of age at the time of the trial and without dependents. June 2, 1936, a small particle, subsequently found to be a piece of steel, flew off the drill and embedded itself in the plaintiff's right eye. Following the accident, plaintiff turned his equipment over to his helper, gave him some instructions relative to the day's unfinished work and went to the company office, contacting "Bill Andrews" to whom the plaintiff referred in his testimony as the "super" explaining that he meant superintendent, and told Andrews about his accident. The plaintiff testified that Andrews told him he would take him to the company doctor, Mrs. Davisson, and that they proceeded to Mrs. Davisson's place. Mrs. Davisson operated a rooming house in Jardine where most of the miners in the employ of the defendant had their living quarters.

Mrs. Davisson was a practical nurse with broad experience in that line of work, and there being no physician at Jardine and no regularly established physician's office nearer than Livingston, some sixty miles away, Mrs. Davisson fixed up a room at her boarding house which she used to render first aid to defendant's employees. She treated the plaintiff by injecting some sort of fluid in his eye and wiped the eye with raw cotton, and the latter operation is alleged to have been done in such a way as to force the piece of steel, afterwards found to have penetrated the eye ball, deeper into the eye thereby practically destroying the sight of the eye.

Mrs. Davisson, on June 14th, twelve days after she had cared for the plaintiff's eye, became ill, took to her bed and died on July 18th. Just prior to her last illness, she dressed the plaintiff's eye a number of times in the evening and morning, but the treatments ceased from June 14th. After the first treatment the plaintiff returned to his work and lost no time until March, 1937, some nine months later. In the month of March, 1937, he received an injury to his left eye and there being no one near by to whom he could go for treatment he was taken to Gardiner where Dr. Grew, an osteopath, rendered first aid, and the plaintiff returned to Jardine. The following day he went to Bozeman and was under the care of Dr. Whitehead there for some time.

In treating the plaintiff's left eye and making a test of plaintiff's vision generally, Dr. Whitehead discovered what he thought was a particle in the right eye, obviously the steel that penetrated the eye on June 2, 1936. The plaintiff's left eye was bandaged during the treatment by Dr. Whitehead and all vision from that eye was shut off and plaintiff testified that he could see all right out of his right eye at that time. Dr. Whitehead advised plaintiff to go to the St. James Hospital at Butte, on the medical staff of which institution there was a Dr. Spurck, a specialist in taking photographic X-rays and have his right eye X-rayed. The plaintiff did not act on this advice until August, 1937, but about that time became a patient at St. James

Hospital under the care of Doctors Donovan and Morse, who had Dr. Spurck make the X-ray photographs of plaintiff's eye. They endeavored to remove the steel from the eye with a powerful magnet but were unsuccessful, and after treating the plaintiff some little time, during which he said he could feel the obstacle in the eye move under the force of the magnet, further treatment was abandoned.

On the advice of the Butte physicians the plaintiff went to Rochester where he was treated for some time. Plaintiff's testimony was rather unintelligible in many particulars and both his counsel, counsel for the defendant as well as the court had to inquire frequently of the court reporter and each other as to what the plaintiff said in his testimony. His sentences were composed of such a jumble of words having no coordination that one is often left to conjecture as to his meaning. But it was sufficiently clear from his testimony that while he was at Rochester some sort of an operation was made on his eye which caused the eye to bleed freely. No apparent relief resulted. He returned to Montana and on being advised that Dr. Murphy of Missoula had some new and powerful magnet he went to Dr. Murphy for treatment and it appears that after being treated he went back some twenty or thirty days later, by appointment, for further treatments, still without satisfactory result. Some time later he returned to Rochester for further treatment but obtained no substantial relief. On his return to Montana he contacted the Industrial Accident Board, seeking compensation but neither he nor the defendant had advised the board of his injury and no claim was made for more than two years and the Industrial Accident Board was without power under the statute to grant him any compensation. During the trial in the lower court he was asked why he had not applied to the Industrial Accident Board at the time of the accident for compensation and he answered that he had not lost any time and had nothing coming. Thereupon this action was commenced.

The complaint was filed October 7, 1938. A general demurrer thereto was filed February 20, 1939, which was sustained; and

the plaintiff appealed to this court. February 14, 1940, we handed down an opinion holding that the complaint stated a cause of action and remanded the cause to the lower court with instructions to overrule the demurrer. *Vesel* v. *Jardine Mining Co.*, 110 Mont. 82, 100 Pac. (2d) 75, 127 A. L. R. 1093. The only question in issue in that case was as to whether or not the complaint stated a cause of action.

The matter came on for trial on the merits March 24, 1941, ▓ before the district court sitting with a jury. Numerous witnesses, including a number of medical experts testified at length and several exhibits were received in evidence. The evidence with the pleadings and instructions and the decree cover some five hundred pages. The jury returned a verdict for the plaintiff and fixed his damages at $26,000, the full amount alleged and demanded. A motion for a new trial was made and denied. The appeal is from the judgment. The action was heard in this court October 13, 1943, and has been under consideration since and the subject of extended conferences. The judgment of the lower court will be reversed and the cause remanded with instructions to grant the motion for a new trial. This conclusion has been arrived at chiefly on the ground that when measured by the amount of damages allowed for similar injuries in numerous cases found in the books, the award of $26,000 is grossly excessive. It is our opinion that the excessive amount of the damages fixed by the jury clearly indicates that passion and prejudice largely controlled their deliberations.

While it is generally conceded that it is the province of the jury to fix the amount of damages when such an award is made to the prevailing party, this and other courts not infrequently reduce the amounts so fixed by the jury or reverse the judgment and remand the cause for a new trial. (See *Chenowith* v. *Great Northern Railway Co.*, 50 Mont. 481, 148 Pac. 330; *Keller* v. *Safeway Stores*, 111 Mont. 28, 108 Pac. (2d) 605, and other cases.)

The judgment in the instant case is reversed and remanded by virtue of subdivision 5 of section 9397, Revised Codes.

The following cases wherein awards of damages were made for loss of sight or injury to the eye are cited as an aid in determining what is a reasonable amount.

In *Wojciech Stolarcz* v. *Interstate Iron & Steel Co.*, 207 Ill. App. 7, the plaintiff, twenty years of age, was allowed $25,000 for loss of both eyes by an explosion of hot slag.

In *St. Louis, I. M. & S. Ry. Co.* v. *True*, 71 Okl. 264, 176 Pac. 758, a railroad foreman was awarded $20,000 for stone embedded in skull, resulting in loss of sight of both eyes. Certiorari denied, 249 U. S. 611, 39 S. Ct. 386, 63 L. Ed. 801.

In *Bagaini* v. *Donk Bros. Coal & Coke Co.*, 199 Ill. App. 76, the plaintiff, a coal miner, was awarded $10,000 for loss of sight of both eyes.

In *P. Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384, a young man twenty-one years of age was awarded $15,000 for loss of one eye, and other injuries.

In *St. Louis S. W. Ry. Co.* v. *Kidd*, Tex. Civ. App., 269 S. W. 471, $10,000 was awarded a machinist twenty years of age for loss of one eye caused by flying piece of steel from an operating lathe.

In *United Verde Copper* v. *Wiley*, 20 Ariz. 525, 183 Pac. 737, $7,500 was awarded a miner for loss of one eye.

In *Mueller* v. *Holekamp*, Mo. App., 260 S. W. 118, a nine year old boy was awarded $10,000 for the loss of one eye and other injuries, which was reduced to $7,000 on appeal.

In *Pelster* v. *Shamrod Boiler Co.*, Mo. App., 268 S. W. 890, an employee in a boiler factory was awarded $6,000 for loss of eye from being struck by a sliver from a sledge hammer. The eye ball was removed.

In *Emerson, Brantingham Co.* v. *Growe*, 191 Ind. 564, 133 N. E. 919, superseding Ind. App., 125 N. E. 223, a mechanic was awarded $4,800 for loss of an eye.

In *Missouri, K. & T. Co.* v. *Edmonds*, 73 Okl. 2, 174 Pac. 1052, a railway mail clerk was awarded $3,000 for loss of one eye.

In *Boldt* v. *American Bottle Co.*, 208 Ill. App. 578, a workman was awarded $2,700 for loss of one eye.

In *Roberts* v. *United Fuel Gas Co.,* 84 W. Va. 368, 99 S. E. 549, a nineteen year old boy was awarded $2,500 for loss of one eye.

In *Newell* v. *Detroit, T. & I. R. Co.,* 235 Mich. 687, 209 N. W. 813, a boiler maker twenty-four years of age was awarded $25,000 for loss of one eye, reduced to $15,000 in order to avoid a new trial.

In *Wichita Falls & N. W. R. Co.* v. *Daven,* 74 Okl. 151, 177 Pac. 909, a skilled laborer, forty-seven years of age, was awarded $20,000 for shoulder and collar bones broken, broken wrist, muscles and ligaments of arm destroyed, one eye lost and other greatly impaired, paralysis of lip, and "terribly disfigured."

In *Galveston, H. & S. A. R. Co.* v. *Contois,* Tex. Civ. App., 279 S. W. 929, a motorman thirty-six years of age was awarded $6,878 for loss of one eye and sight of the other greatly impaired.

In *Hoffman* v. *City of St. Paul,* 187 Minn. 320, 245 N. W. 373, 86 A. L. R. 198, a woman was awarded $5,200 for loss of one eye and other severe injuries.

In *Schwarting* v. *Ogram,* 123 Neb. 76, 242 N. W. 273, 81 A. L. R. 769, an award to a young girl student of $15,000 for serious personal injuries, affecting her general physical condition, impairment of eyesight, general debility of a permanent nature, medical testimony was to the effect that the injuries were progressing towards traumatic insanity, and the court declined to hold the award excessive.

In *Howard* v. *Mobile & O. R. Co.,* 335 Mo. 295, 73 S. W. (2d) 272, a locomotive fireman earning $180 per month, complete loss of sight of one eye and other sympathetically affected, qualified to run engine when his seniority entitled him to do so, left completely disabled as a fireman or engineer, was awarded $14,500.

In *Dolgin* v. *McDonald,* 151 A. 89, 8 N. J. Misc. 572, a woman twenty-four years of age was awarded $10,000 for destruction of sight of one eye, scarred face and inability to continue in former occupation.

In *Wiggins* v. *Missouri-K.-T. R.,* 128 Kan. 32, 276 Pac. 63, a

brakeman was awarded $17,500 for loss of sight of one eye; reasonable life expectancy thirty-four years; reduced to $12,500, on appeal and if not accepted new trial ordered.

In *Teche Lines* v. *Bateman,* 162 Miss. 404, 139 So. 159, a trained nurse, aged twenty-eight, awarded $12,000 for loss of one eye. On appeal reduced to $7,000 on condition if not accepted the case would be reversed and remanded for assessment of damages by another jury.

See numerous additional cases in annotation 102 A. L. R., pages 1259, et seq. The most the plaintiff could have obtained under the provisions of the Workmen's Compensation Act for the loss of the sight of *both eyes* would have been approximately $8,500.

The judgment of the lower court is reversed and the cause remanded with instructions to vacate its order denying the motion for a new trial and enter an order granting the same.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE ADAIR concurs in the result.

HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified:

I dissent. While I do not care to write an extended opinion, I feel bound to indicate that my dissent goes to the intimation that there may be a liability upon the facts disclosed by the record. I agree that the amount of the award indicates the presence of passion and prejudice, but I cannot assent to any conclusion that would indicate that the evidence as it was adduced was sufficient to support a verdict or a judgment in any amount in favor of plaintiff. I would point out briefly my reasons.

As I read and understand the opinion of this court upon the former appeal of this case (*Vesel* v. *Jardine Mining Co.,* 110 Mont. 82, 100 Pac. (2d) 75, 76, 127 A. L. R. 1093), the court held that the complaint stated a cause of action, the substance of which was that plaintiff contended that defendant had "assumed to render medical aid and attention to" him, and that defendant was negligent in selecting and employing an unskilled

and incompetent person to care for him. In my opinion plaintiff upon the trial following the reversal by this court upon the former appeal failed to meet the burden which was upon him in at least two respects. The first one of these is that the evidence fails to show that defendant had assumed to render medical aid and attention to plaintiff, and the second one is that even though it had shown that an individual, claimed by plaintiff to have been superintendent of defendant company, had assumed to render such aid and attention, there is no evidence from which it can be found he had authority to make such engagement for defendant company in the light of the fact that defendant company carried compensation insurance to which plaintiff had assented.

If plaintiff had brought his action against the man claimed by him to have been the superintendent premised upon fraud resulting in a loss of his rights to make claim under the compensation insurance he might have been entitled to recover.

In my opinion, at least as far as the record in this case goes, the defendant company was not liable and the cause should be remanded with directions to enter judgment in favor of defendant company and against plaintiff.