## SMITH v. BOSTON & MAINE RAILROAD.

Railroads engaged in interstate commerce are not exempt by their federal constitutional rights from the operation of s. 8, c. 162, Gen. Laws, which makes the proprietors of every railroad liable as insurers for damage done by fire from a locomotive on their road.

Evidence that certain fires were set by the defendants' locomotives may tend to show that another fire could have been and probably was set in the same manner.

In an action upon Gen. Laws, c. 162, s. 8, for the destruction of property by fire from a locomotive, the defendants are entitled to no reduction on account of the plaintiff's insurance, if the insurer has paid nothing.

CASE, for burning the plaintiff's barn and other buildings and their contents by fire from the defendants' locomotive. Plea, the general issue; also, that " the defendant was engaged at the time and place alleged by the plaintiff in his said writ, with the said locomotive, in commerce between different states, to wit, in the transportation of freight from the state of Maine, through and across the state of New Hampshire into the commonwealth of Massachusetts, and that the said defendant, by its officers, agents, or servants, was then and there guilty of no negligence in the management of said locomotive and the conduct of said business." To the special plea the plaintiff demurred. The demurrer was sustained, and the defendants excepted.

Subject to exception, evidence was admitted of other fires near the line of the railroad at other times, occurring in dried grass and other combustible material, soon after the passing of locomotives. It appeared that the locomotives used on those occasions were of the same construction, were used for burning coal, and had the same kind of spark-arresters as those used at the time of the fire in question.

The plaintiff held insurance upon part of the property destroyed, and whether the amount of the loss had been adjusted by arbitration between the plaintiff and the insurers was in dispute at the trial. The insurance has not been paid. Verdict for the plaintiff, with general assessment of damages, which the defendants move to set aside.

*Copeland & Edgerly*, for the defendants. Every obstacle to the transportation of merchandise from one state to another, and every burden laid upon it by legislative authority, is regulation of commerce within the meaning of the United States constitution. *Railroad Co.* v. *Husen*, 95 U. S. 470. That the statute making railroads insurers of property along their lines imposes a burden upon trans-

portation, there can be no doubt.   The plaintiff does not deny that it is an additional and a heavy burden upon transportation, but seeks to justify it on the ground that it is only a police regulation. The boundaries of this police power are very uncertain.   There is no definite line separating the cases which are and those which are not to be sustained on that ground.   *Strong*, J., 95 U. S. 465, 472; *Waite*, C. J., 95 U. S. 485, 488.

While, as the plaintiff says, " the police power of a state extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property in the state," still, in the language of Judge *Strong*, in the case cited by the plaintiff in support of this point,—" Whatever may be the nature and reach of the police power of a state, it cannot be exercised over a subject confided exclusively to congress by the federal constitution.   It cannot invade the domain of the national government."   The best description of this police power which we have been able to find is the following:  " If the act contributed to the comfort and welfare of the public, and did not deprive the company of any essential right conferred by its charter, its passage was a proper exercise of the police power."   *Chicago, &c., R. R.* v. *People*, 105 Ill. 657, and 13 Am. & Eng. R. R. Cases 45.

Applying this test to our statute, we claim that it does not contribute to the comfort and welfare of the public, because it adds nothing to the protection which the common law gives to property-owners against damages caused by the fault of the railroad.   For loss arising in any other way, the company ought not to be compelled to answer.   And it certainly deprives the company of a very essential right which they possessed when their charter was granted, and that is the right to interpose the plea that the loss arose from the fault and neglect of the owner, and not from any misconduct of themselves or their agents.   Though the defendants may have " no vested interest in the common law," it has been held by high authority that a "state statute which abrogates all common-law remedies for the wrongful exclusion of a passenger from the cars of a railroad company is unconstitutional, so far as it relates to railroads running between two or more states, it being a regulation of interstate commerce that the state has no power to make."   *Brown* v. *Memphis & C. R. R. Co.*, 5 Fed. Rep. 499.

If the abrogation of common-law remedies is unconstitutional as applied to interstate railroads, the abrogation of common-law defences as applied to them must also be; and that is just what this statute does.   It denies the right of the railroad to make the defence of contributory negligence on the part of the owner of the destroyed property.   The two statutes seem to be exactly parallel. No one will maintain that the defendants' charter contemplated that the company should do an insurance business.   A statute very similar to this, which imposed an absolute liability on the company for injuries to cattle without any negligence or breach of duty, has

been held unconstitutional, as depriving it of its property without "due process of law." *Zeigler* v. *S. & N. A. R. R. Co.*, 58 Ala. 594; *Memphis & C. R. R. Co.* v. *Lyon*, 62 Ala. 71.

It may be that railroad companies are from the beginning subject to such laws and regulations as might be established by the legislature for the common good. But the regulations must be police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise, must not be in conflict with any of the provisions of the charter, and must not, under pretence of regulation, take from the corporation any of the essential rights and privileges which the charter confers. Cool. Con. Lim. *577, and cases cited. This statute, then, is not a police regulation, for it curtails rights conferred upon the company by its charter; and because it lays an additional weight upon the business of the company, it is a regulation of commerce. There is no question that it imposes a burden on transportation. "Transportation is essential to commerce, and every burden laid upon it is *pro tanto* a restriction." *Case of the State Freight Tax*, 15 Wall. 232.

Chief-Justice *Waite*, in *Hall* v. *De Cuir*, 95 U. S. 488, says,—"We think it may be safely said that state legislation, which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive powers of congress." Whenever the terms by which a power is granted to congress, or the nature of the power requires that it should be exclusively exercised by congress, the subject is as completely taken from the state legislatures as if they had been expressly forbidden to exercise the power. *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Brown* v. *Maryland*, 12 Wheat. 419.

We call attention to the following cases, where it has been decided that whatever burdens legislation imposes upon transportation are regulations of commerce, and consequently unconstitutional: *Brown* v. *Maryland, supra; Passenger Cases*, 7 How. 445; *Wheeling Bridge Case*, 13 How. 518; *Sinnot* v. *Davenport*, 22 How. 227; *Case of State Freight Tax, supra; Henderson* v. *Mayor of N. Y.*, 92 U. S. 259; *Chy Lung* v. *Freeman*, 92 U. S. 275; *Welton* v. *Missouri*, 91 U. S. 275; *Sherlock* v. *Alling*, 93 U. S. 99; *Foster* v. *Wardens of New Orleans*, 94 U. S. 246; *R. R. Co.* v. *Husen*, 95 U. S. 465; *Hall* v. *De Cuir*, 95 U. S. 485; *Co. of Mobile* v. *Kimball*, 102 U. S. 691; *Webber* v. *Virginia*, 103 U. S. 344; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *People* v. *Compagnie G. T.*, 107 U. S. 59; *Brown* v. *Memphis, &c., R. R., supra; Carton* v. *Ill. Central R. R.*, 59 Iowa 148—*S. C.*, 44 Am. Rep. 672.

When the legislature decided that the public needs required the construction of a railroad through the town of Newmarket, it became necessary under the constitution for the grantees of that charter to pay for the property of individuals, along the line of their proposed road, which they might take from them in executing their franchise; and in computing the damages to the adjoining

land-owners, the risks and danger incidental to the running of fire
-engines were included in the estimate.    This plaintiff, or his priv-
·ies, has been paid once for the risk he runs of fire.

Frink and Page, for the plaintiff.    Our statute, making rail-
·roads liable for damages occasioned by fire from their locomotives,
¨imposes no restrictions or regulations upon commerce between the
·states, within the meaning of the constitution.    It is merely an at-
·tempt of the legislature to regulate the use of dangerous machines,
-owned and managed by one citizen, in a manner that is reasonable
·and expedient for the safety and protection of the property of
·other citizens and the rights of the public.    In other words, it is a
·police regulation, and the defendants might as well claim an
·exemption from the various statutes regulating the rate of speed,
-the manner of crossing highways, the burden of establishing con-
·venient depots and stopping at them, or the running of trains on
·Sunday.

Congress has enacted no statute upon the subject.    It is wholly
·a matter of domestic concern, and the state has the right to legis-
late upon it to protect its own citizens, even though in so doing it
·may indirectly operate upon commerce outside of its immediate
·jurisdiction.    It is only in cases of direct interference, direct taxa-
·tion, or legislation directly aimed at commerce and amounting to a
·prohibition, that statutes have been held unconstitutional.   Neither
·the act of throwing fire from an engine, or the engine itself, is a
·part of the commerce between the states, and the statute only
·attempts to regulate these.    Pierce v. State, 13 N. H. 536, 577 ;
Railroad v. Fuller, 17 Wall. 560 ; Munn v. Illinois, 94 U. S. 113 ;
·State Tax on Railway·Receipts, 15 Wall. 293 ; Slaughter-House
Cases, 16 Wall. 36 ; Packet Company v. Catlettsburg, 105 U. S.
·559 ; United States v. Bevans, 3 Wheat. 337 ; Thorpe v. Railroad,
27 Vt. 140 ; Gibbons v. Ogden, 9 Wheat. 1 ; Brown v. Maryland,
12 Wheat. 419.

The police power of a state· extends to the protection of the
·lives, limbs, health, comfort, and quiet of all persons and the pro-
·tection of all property within the state, and it must of course be
·within the range of legislative action to define the mode and man-
·ner in which every one may so use his own as not to injure others.
Thorpe v. Railroad, 27 Vt. 149 ; Railroad Co. v. Husen, 95 U. S.
·465 ; Beer Co. v. Massachusetts, 97 U: S. 25.    And even if the
·statute in question were conceded to be an attempt to regulate com-
·merce, it would still be valid until superseded by action of congress.
The James Gray v. The John Fraser, 21 How. 184 ; Cooley v.
Wardens, 12 How. 319 ; Willson v. Company, 2 Pet. 250.

Doe, C. J.    The federal question is settled by federal authority
·in favor of the plaintiff.    No question was raised at the trial as to
·the effect of including a risk of fire in land damages paid by the

defendants when their road was built. It does not appear that the road was built on land now owned by the plaintiff.

Evidence that other fires were set by the defendants' locomotives might tend to show that this fire could have been and probably was set in the same manner.

The plaintiff having received nothing from the insurance company, the defendants were entitled to no deduction by the jury from the damages, upon Gen. Laws, c. 162, s. 10. The rights of the parties, derived from that section, were not determined by the verdict.

*Judgment on the verdict.*

ALLEN, J., did not sit: the others concurred.