Rockingham, }
  Dec., 1897. }

SHUTE, *Adm'r,* v. EXETER MANUFACTURING CO.

In an action for injuries resulting from the breaking of a pulley, evidence that a former pulley of the same size, construction, and material, broke while being used in the same place, for the same purpose, and in the same way, is competent to show the cause of the breaking in question and the defendant's knowledge of the defect complained of.

CASE, for negligence in providing a defective pulley and driving it at an unsafe rate of speed by an unsuitably tight belt, in consequence of which the pulley broke and fatally injured the deceased, an employee of the defendants. Trial by jury. Verdict for the plaintiff.

A pulley in the defendants' mill broke December 23, 1896, and a piece of it struck the deceased, who was attending a spooler near by, and caused injuries from which death resulted. The evidence tended to show that the pulley was put on the shaft December 4, 1896; that it took the place of another of the same size, form of construction, and material, and was used for the same purpose and in the same way. Subject to the defendants' exception, the plaintiff introduced evidence tending to show: (1) That the first pulley broke; (2) that from June or July, 1895, to the time of the injury to the deceased, the belt on these pulleys was tight; (3) that in December, 1895, and subsequently, one of the defendants' overseers called the attention of the superintendent (who had charge of such matters) to the tightness of the belt and told him it was dangerous,— to which he replied that he didn't care about the danger, it was production that he wanted; that the same overseer also called the attention of the defendants' agent and one of their directors to the same matter, and told him that it was liable to break the shaft or pulley,— to which the director replied that he thought the belt was too tight.

It appeared in evidence that the defendants' servants began to remove the remnants of the broken pulley from the shaft before the deceased was removed from the room. The plaintiff's counsel, in his closing argument to the jury, said in substance : They [the defendants] were so anxious for production that they took down remnants of the pulley while the girl lay bleeding upon the floor. The defendants excepting, the counsel withdrew the remark and asked the jury to exclude it from consideration, as if it had not been made. At the plaintiff's request, the jury were instructed to disregard the remark, to which the defendants excepted.

*Henry A. Shute* and *John Kivel*, for the plaintiff.

*John S. H. Frink* and *John W. Kelley*, for the defendants.

WALLACE, J.    One of the questions was whether the breaking of the pulley which injured the deceased was caused by the defendants' negligence. In order to sustain his action, it was necessary for the plaintiff to prove that it was. The evidence that the first pulley, which was " of the same form of construction and material, and used for the same purpose and in the same

way" as the last one, broke a short time before the accident; that both pulleys were driven by a tight belt; and that the tightness of the belt and the danger of its breaking the shaft or pulley were called to the attention of the defendants, was admissible in connection with the other evidence. It tended to prove that the breaking of the pulley at the time of the accident was caused by a tight belt, and that the defendants were chargeable with notice of the defect and the danger likely to result from it. *Boyce* v. *Railroad*, 43 N. H. 627; *Darling* v. *Westmoreland*, 52 N. H. 401; *Smith* v. *Railroad*, 63 N. H. 25; *Haseltine* v. *Railroad*, 64 N. H. 545.

The closing argument of the plaintiff's counsel, that the defendants "were so anxious for production that they took down the remnants of the pulley while the girl lay bleeding upon the floor," contained no statement of fact which the evidence did not tend to prove, and was legitimate.

*Exceptions overruled.*

CHASE, did not sit: the others concurred.