No. 28,520.

J. B. WIGGINS, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

(276 Pac. 63.)

Opinion filed April 6, 1929.

*W. W. Brown, C. E. Pile,* both of Parsons, and *Douglas Hudson,* of Fort Scott, for the appellant.

*Charles Stephens, F. E. Dresia,* both of Columbus, and *John L. Connolly,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action is under the federal employers' liability act to recover from the defendant railroad company for the loss of sight in plaintiff's right eye, occasioned by the explosion of a

torpedo in the engineer's clothes box upon the locomotive on which plaintiff was working as a brakeman on August 5, 1923. Plaintiff recovered a judgment for $17,500, from which defendant appeals, specifying twelve errors.

The grounds upon which plaintiff bases his right to recover are that defendant had within a month before the injury commenced using another and different kind of torpedo from that which it had formerly used; carried them in another and different place from where they had usually been carried, namely, in the clothes box of the engineer instead of a rack in the engine cab, and in the same box with fusees and other flagging equipment, of which changes the defendant had failed to inform and advise the plaintiff and of which he had no knowledge prior to the injury; that he had worked for the defendant company at different times and for limited periods during the last nine years before the injury, and was accustomed to and acquainted with the duties of a brakeman; that it was a part of his duty as head brakeman to see if the locomotive was equipped with all the usual and necessary flagging material for signal purposes, consisting of a lantern, a flag, fusees, and torpedoes; that when he failed to find any rack in the cab he asked the fireman where they were kept, and he suggested that he look in the clothes box of the engineer; that when he looked in and could not see the bottom of the box he put his hand in the box and it came in contact with and moved some object which he now believes to have been a fusee with a sharp metal spike in the end of it, which fell to the bottom of the box and against and into one of the long torpedoes therein and caused it to explode, throwing a piece of its lead covering into his right eye, which caused the loss of his sight therein. It is further alleged that the long, round torpedo is very sensitive and more likely to explode under such circumstances than those formerly used, and the defendant was negligent in carrying them in such place with such fusees and not informing the workman of these circumstances. The answer of the defendant is a general denial, followed by allegations of contributory negligence and assumption of risk.

The first two specifications of error involve the sufficiency of the pleadings and the right of the defendant for judgment thereunder, together with the opening statement of the plaintiff and the right of the plaintiff to introduce evidence in support of the allegations of the petition. Attention is called to inaccuracies and inconsistencies in the opening statement, but these ordinarily, and in matters of

detail especially, will not disturb or lessen the force and effect of the allegations of the petition, which, in an earlier appeal of this case, were held by this court to have been sufficient to constitute a cause of action. (*Wiggins v. Missouri-K.-T. Rld. Co.*, 122 Kan. 414, 251 Pac. 1095.)

The next assignment of error is with reference to the introduction of evidence, particularly that of one Hendricksen, who was at the time of the injury and some time prior thereto engine inspector in the yards at Parsons, where the injury occurred, and who testified as to a similar explosion of a torpedo of the same kind in the seat box or clothes box of the engineer in the yards at Parsons two or three weeks prior to the time of this injury. He related that he was placing some fusees in such a box and there was an explosion of one of these long, round, lead-covered torpedoes, and upon examining the box thereafter small pieces of lead were found in the box, and that he reported this incident to two of his superior officers within the next few days. It is urged by appellant that proof of one occurrence entirely disconnected with the one involved will not establish the allegations as to another and different incident or accident, which is the general rule; but where the conditions are not only similar but the same, and the evidence goes to illustrate a physical fact, such evidence is relevant and admissible. Where the injury complained of was a defect in the sidewalk, evidence of other accidents having happened at the same place a few days earlier or later was held admissible.

"In an action against a city to recover damages for injuries received from a fall on a defective sidewalk, it is competent for the plaintiff to show that while the walk was in the same condition similar accidents had occurred at the same place." (*City of Topeka v. Sherwood*, 39 Kan. 690, syl. ¶ 5, 18 Pac. 933.)

This ruling is cited with approval in *Mundell v. Greeley*, 76 Kan. 797, 92 Pac. 1117, where it was said in that connection:

"It must be said that upon the same conditions being shown to exist evidence of prior accidents at the same place is relevant in this class of actions." (p. 798.)

"Evidence of other accidents similar to the one in question in certain particulars which do not establish relevancy are excluded. But where the evidence of similar accidents is given simply to illustrate the physical facts, and the conditions are the same, the evidence is admissible. Such evidence is also held admissible in some cases as tending to show that defendant had notice of the defect claimed to have caused the accident." (22 C. J. 753.)

"Evidence of similar occurrences is admitted where it appears that all the essential physical conditions on two occasions were identical for under such

circumstances the observed uniformity of nature raises an inference that like causes will produce like results." (22 C. J. 751.)

The objection also extends to the admission of the testimony of this witness with reference to the experiments he said he made by way of comparison between these different torpedoes, assuming to state facts concerning the experiments rather than opinions. Physical facts concerning an agency in question are generally admissible. Similar experiments and opinions were given later in the case by a recognized expert produced as a witness by the defendant.

The next assignment of error is the failure of the court to prevent the repetition of certain questions and certain remarks by counsel for plaintiff which were claimed to be prejudicial to the defendant. They were where plaintiff's counsel continued asking witness Hendricksen questions in detail about the injury to one of his fingers at the time of the explosion of the torpedo two or three weeks prior to the injury to plaintiff and about telling the plaintiff's father of the explosion and the injury he sustained. All these objections were sustained by the trial court, but appellant complains that counsel continued asking the same or very similar questions notwithstanding the sustaining of the objections. If this were an occurrence on the witness stand before the jury it would indeed be very improper, but we observe this evidence was taken by deposition, and plaintiff's attorney at the time of repeating these many questions did not have the benefit of the court's ruling and had a right to pursue the inquiry according to his own theory of the case. It is not stated, but inferred, that this part of the deposition was recited in detail before the jury. This should not have been done, but either party could have called the court's attention to the long list of similar questions following and requested his ruling on the objections thereto, without reading each of them to the jury. The other reference to the conduct of attorney for plaintiff is in referring several times to the rule offered in evidence by the defendant that "employees in accepting employment assume its risks," as being in contravention to the holdings of the supreme court of the United States. The court sustained plaintiff's objection, which included this statement. Later, when defendant again offered this rule in evidence, once directly and once through a question asked a witness, the attorney for plaintiff made the same objection, referring to the supreme court of the United States, without naming a case. It was perhaps unnecessary to refer to any court or decision after the court had once sustained the objection, but attorneys generally pursue the same method that

has once been favorably received and accepted by the court, and if the defendant wanted again to get a more favorable ruling from the trial court on the admission of this item of evidence it cannot well object to the interposition of the same objection, even if it might have been framed in preferable language.

The next assignment of error is the overruling of the demurrer to plaintiff's evidence. It is insisted at the close of the abstract and throughout the appellant's brief that there was no evidence in support of the allegations of the petition. This necessitates our making a brief analysis of the testimony of the plaintiff. There was evidence tending to show that plaintiff was experienced in the duties of a brakeman on a railroad, having worked for the defendant company a good deal of the time for the past nine years; that he was thirty-one years of age at the time of the injury; that he had resumed work for the company just two days before the injury; that he was familiar with the old form of torpedoes and fusees and other flagging equipment, with the places where they were usually kept and how they were used; that he had never been informed of the use of the long, lead-covered torpedo prior to the injury; that he had never seen or heard of such torpedo before, which had only been used by the defendant about thirty days before the injury; that he had not been informed of the flagging equipment being carried in the engineer's seat box or clothes box; that he did not know of the torpedoes and fusees being kept together in the same box; that usually the torpedoes had been kept in a rack in the cab or some separate place by themselves; that it was a part of his duty as head brakeman to see if the engine was properly equipped with flagging material; that when he failed to find it in the places he was accustomed to seeing it he was advised to look in the engineer's clothes box; that he could not see the bottom of the box, and put his hand in and it touched something like a fusee, which dropped or fell and the explosion followed, from which he lost the sight of his right eye, from which the physician removed a piece of lead; that an examination of the box immediately thereafter showed a lead-covered torpedo had exploded in the box, and fragments of it were there; that there were removed from the box a number of flat torpedoes and a few long, lead-covered ones and a number of fusees after the explosion; that within two or three weeks prior to this injury a similar explosion of a lead-covered torpedo occurred in the same kind of a box on an engine in the same yard when the engine

inspector was supplying the box with some extra fusees; that this incident was related the next day to one of the superior officers of the defendant company and a few days later to another officer. We think the foregoing shows there was some evidence to support all the essential allegations of the petition and that the demurrer to the evidence was properly overruled.

The next error assigned is in the giving of instructions to the jury, especially on the question of assumption of risk. The main criticism of this instruction is not so much the particular language used in the instruction, giving both sides of this very difficult question, but that this feature of the case was submitted to the jury at all. It is urged that "such a matter should not be, submitted to a jury. The law conclusively presumes that he does know such dangers and risks as inhere in the work carried on in the usual and customary manner." The earnestness of appellant in support of its theory seems to have impelled the conviction that there was no question of fact to be determined by the jury as to whether the work of the defendant was being carried on in the usual and ordinary manner, or whether the defendant was furnishing the usual and safe instrumentalities for such work, or whether the plaintiff knew or appreciated the danger, or by the use or exercise of reasonable and ordinary care could have known and appreciated the danger. If these matters are to be conclusively presumed it is then only a question of giving an imperative instruction or sustaining a demurrer to the evidence. An examination of the authorities cited does not persuade us that there is no question here for the determination of a jury.

It is said the answers to special questions submitted to the jury are not sustained by the evidence. The statement herein of part of the evidence will show there was evidence sufficient to justify the findings made. Of course, there was evidence contradicting some of it, and quite forcibly, but the province of the jury was to determine the credit to be given to that which was conflicting, and we see no error in the trial court refusing to set aside any of these findings as contrary to the evidence; neither are they inconsistent, in our judgment, with the general verdict.

Another assignment of error is that the verdict for $17,500 is excessive. This matter will be considered in connection with the giving of instructions and the motion for new trial. There is nothing in the record that indicates to us that the jury was moved by pas-

sion or prejudice in arriving at its verdict, and, therefore, if the verdict is deemed by this court to be excessive it is within its province, and it will be its duty, to offer the plaintiff the option of accepting a judgment for a smaller designated sum or submitting to a new trial.

"If there is an absence of passion or prejudice in the jury the court may require the successful party to remit so much of the award as is deemed to be excessive or submit to a new trial." (*Yard v. Gibbons,* 95 Kan. 802, syl. ¶ 6, 149 Pac. 422.)

"Where a verdict is excessive this court may offer the plaintiff the option of accepting a judgment for a designated sum or a new trial, which is done in this case." (*Davis v. Railway Co.,* 81 Kan. 505, syl. ¶ 3, 106 Pac. 288.)

"Upon consideration of the findings and all the circumstances proved the award of exemplary damages is held to be excessive, and the plaintiff is allowed to remit a part thereof. If he fail to do so, a new trial is ordered." (*Telegraph Co. v. Bodkin,* 79 Kan. 792, syl. ¶ 2, 101 Pac. 652.)

"Where a judgment is reversed upon the sole ground that the damages awarded are excessive, this court may indicate the excess, and allow it to be remitted and judgment entered for the remainder." (*Mo. Pac. Rly. Co. v. Dwyer,* 36 Kan. 58, syl. ¶ 4, 12 Pac. 352. See, also, *Stroup v. Northeast Oklahoma Rld. Co.,* 122 Kan. 587, 212 Pac. 93.)

The views of this court with reference to the excessive amount of the verdict in this case are along the lines expressed in *Argentine v. Bender,* 71 Kan. 422, 80 Pac. 935, that "the error of the jury may be attributed to a mistake of judgment, free from unfair intent" (syl.), and that "a sufficient explanation of the course of the jury, without involving the supposition that they were actuated by unfair motives, may be found in the meagerness of the instruction given them as a guide to the amount of recovery." (p. 425.) The following is the only instruction given in this case on the measure of damages:

"If you find for the plaintiff, you will assess his damages in such sum as will, in your judgment, fairly and adequately compensate him for the injuries sustained by him as the direct and natural consequence of the explosion in question, taking into consideration the nature, extent and probable duration of the plaintiff's injuries, their effect upon his health, comfort and convenience, his physical pain and mental anguish caused thereby, but in no event can your verdict exceed the sum of $50,000."

The evidence introduced showed from tables of recognized authority that the plaintiff's reasonable expectancy was thirty-four years, and calculations were made therefrom on the basis of the average wages plaintiff had been earning, and such results were submitted to the jury by the plaintiff, together with other damages claimed along the following lines, viz., pain and suffering, loss of

right eye and great impairment of left eye, permanent loss of pleasure in reading, attending and enjoying picture shows, dancing, fishing, hunting, and automobile driving; also embarrassment and chagrin, restless nights, stumbling and running into things, worry and fret, and loss of promotion. The appellee's estimate of the amount claimed for each of these items or groups of items, makes a total of $145,645.20. It is not the thought of the court that any financial amount whatever would fully compensate anyone for the loss of an eye. That is not the theory of the law of damages, even in cases under the workmen's compensation law, as that term indicates, but it is to be such reasonable damages for the loss as can be considered and accepted generally as reasonable and within the possible reach of the employer in this and other fields of employment where such losses most usually occur. Although the appellee's estimate reaches the sum of $145,000, yet the petition only asked for $50,000 —evidently an exercise of judgment on the part of the plaintiff. Likewise, the jury, with that evidence before it, thought a much smaller sum was more nearly fair and reasonable. We think that if the measure of damages had, in the instructions, been more fully explained to the jury as applied to the various items claimed by the plaintiff, such explanation might have afforded the jury a better guide to the determination of the amount of recovery, which we think should be $5,000 less than the amount found by the jury. Many cases are cited where verdicts for loss of an eye have been held excessive, but we will refer to only one of them, in the opinion of which there is a review of twenty-three other similar cases and a finding that $6,500 is the average verdict in them for the loss of an eye. (*Morris v. Hines,* 107 Neb. 788.) The footnotes in 17 C. J. 1116 give a list of cases where awards for the loss of an eye have been held excessive or not excessive. Many of these cases involve the loss of one eye and the impairment of the vision of the other, and other facts very much like those in the case at bar.

In view of these considerations it is held that the verdict is excessive and the judgment of the district court is set aside and a new trial granted unless the plaintiff agrees in writing to accept a judgment of $12,500. If such remittitur is filed the judgment to the extent of $12,500 will be affirmed.

The judgment is affirmed upon condition, and the cause is remanded for further proceedings in accordance with the views herein expressed.