No. 31,283

J. D. Logston, *Appellee*, v. P. S. Needham, as Executor of the
Estate of Amanda A. Jenkins, *Appellant*.

(26 P. 2d 443.)

Opinion filed November 11, 1933.

*John L. Connolly,* of Fort Scott, *P. E. Nulton* and *George L. Stevenson,*
both of Pittsburg, for the appellant.

*C. S. Denison,* of Pittsburg, and *G. W. Corporon,* of Arcadia, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to recover from the executor of
the estate of Amanda A. Jenkins for services rendered and goods
and supplies furnished her during her lifetime by the plaintiff.

The claim originally filed was stated as a verified account for
$20,000, to which was attached a supplement. The supplement con-
tains a statement of claimant's being taken into the home of Mr.
and Mrs. Jenkins when he was about four years of age, his staying
with them until he was 21 years of age, when Jenkins gave him two
horses, and a little later he went to Oklahoma. In 1899 Mr. Jenkins
requested him to return and take charge of his farming operations,
the compensation agreed upon being set out. In 1904, on his death
bed, Mr. Jenkins asked claimant to take good care of Aunt Mandy
(Mrs. Jenkins) during the rest of her life, and upon claimant's
promising to do so, said:

"I have made no provision in my will for Jim (J. D. Logston), but I want

him provided for. I want him to have this 200-acre home place, for no one deserves it any more than does he. So, I want you to break my will and give him this 200 acres. I am leaving plenty for all of you if it is taken care of."

Mrs. Jenkins moved to Arcadia in 1907. Just before moving she sold the 200 acres for $20,000 cash. Claimant set out in general terms services performed by him. The supplement concludes:

"A month or so prior to her last illness I took her to Arkansas to see her sick brother, Tom Mitchell. En route back home, she said to me: 'Jim, you have complied with Mr. Jenkins' request to the letter. You have certainly been faithful to me. I don't know what I would do if it were not for you and Rosy. I have got it fixed to take care of you so you will never want for anything.' When I thanked her, she said: 'You need not thank me, for it is a debt I owe you.' Wherefore, the undersigned will be willing to appear before the probate court and the executor of Mrs. Jenkins' will and submit to questioning concerning the justice of his claim."

A suit in specific performance would not lie, which probably explains why a claim was filed in the probate court. The claim was first presented to the probate court and disallowed. An appeal was taken to the district court, where trial to a jury was had, which resulted in a verdict for plaintiff for $14,000, which was approved by the trial court and judgment rendered accordingly. The executor's motion for a new trial was overruled, and he appeals. Three questions were presented and argued: The overruling of the demurrer to plaintiff's evidence, the overruling of appellant's motion to vacate the judgment and grant a new trial, and that the verdict was excessive and given under the influence of passion and prejudice.

While it might appear from the statement of claim filed in the probate court that the claim was based on an agreement reached in 1904 in the conversation between claimant and Mr. Jenkins, followed by the conversation between Mr. and Mrs. Jenkins, the court instructed on the theory that the services were performed and supplies were furnished under and by virtue of a verbal contract between Amanda Jenkins and the claimant, which was in substance that if claimant would take care of Amanda Jenkins during her lifetime and perform services and other work for her, that she would pay therefor, that claimant had performed such services from the date of the death of Mr. Jenkins to the date of the death of Mrs. Jenkins, and such services were worth the sum of $20,000. The sixth paragraph of the instructions is as follows:

"6. You are instructed that if you should find from a preponderance of the evidence that the services claimed for, or any part thereof, were performed

by the claimant or plaintiff for the deceased, Amanda Jenkins, upon an express contract that the same should be paid for, or with the understanding and agreement of both the plaintiff and the deceased, Amanda Jenkins, that same should be paid for, then you should find for the plaintiff, and should allow him in your verdict the fair and reasonable value of such services as plaintiff so rendered at the time and place where rendered. But unless you so find, your verdict should be for the defendant."

In two other instances in the instructions, the court made it clear that the amount of recovery was the "reasonable value of such services, not exceeding the amount claimed."

The claimant's evidence, to which the jury by its verdict gave credence, showed the following: When claimant was about four years old he was taken into the home of Mr. and Mrs. Jenkins, who lived on a large farm in Crawford county, there being 200 acres in the home place. When claimant reached the age of 21, which was in the spring of 1888, he left the Jenkins home and lived with a Mr. Garrett and farmed for himself until fall, when he sold his crop and went to the Indian Territory, where he remained until 1900. It is not shown why claimant returned to Crawford county. On his return he and his wife occupied a house on the 200-acre farm which was near to or joined the Jenkins house. From 1900 on to the death of Mr. Jenkins in 1904 claimant did all of the farm work. From 1904 to 1907, when it appears that the farm was sold for $20,000, claimant occupied the farm with Mrs. Jenkins. She moved to Arcadia in 1907 and claimant then moved on another farm owned by Mrs. Jenkins and continued thereon until her death in 1932. Mrs. Hood, a disinterested witness who had known Mrs. Jenkins for many years, and who acted as a companion for her, testified that Mrs. Jenkins told her that Logston paid rent and also paid taxes on the farm he occupied. At the time Mrs. Jenkins moved to Arcadia, in a conversation respecting what provision she was going to make for claimant, she told claimant's wife that Mr. Jenkins had requested her to give claimant the 200 acres or its equivalent and "I have sold it, but I expect to make it good." And she told neighbors who had known her for years, with reference to the last farm occupied, that it was hers now, but it was to be Jim's, and referring to claimant and his wife, she said, "Yes, they are all I got and I want Jim paid for everything he has done for me." And during her last illness she was anxious that papers be fixed—that she wanted to have all that was in the Home State Bank made over to him. And

there was much testimony with respect to the care and attention which claimant and his wife bestowed upon Mrs. Jenkins, as well as with respect to the farm products which they brought to her. Some of this testimony was weakened on cross-examination, but there was no controverting testimony. There was evidence of checks from Mrs. Jenkins to claimant, claimant's wife's statement that they borrowed from Mrs. Jenkins and paid her back; that Mrs. Jenkins purchased an automobile for them costing $737; that they took her on trips to Oklahoma, Arkansas and elsewhere, all of which tended to show that claimant and his wife and Mrs. Jenkins were closely associated for many years. Defendant offered in evidence a will made by Mrs. Jenkins in June, 1907, by the terms of which she devised a quarter section of land to claimant and his wife during their natural lifetimes and so long as they remained on the premises. This land was occupied by claimant and his wife from the time Mrs. Jenkins moved from the 200-acre farm to Arcadia. The evidence does not disclose whether the will was made before or after she sold the 200 acres, but as it disposes of no other real estate than that given claimant and his wife, we assume it was after the sale of the 200 acres. There was testimony the 160 acres was worth from $20 to $25 per acre at the time of Mrs. Jenkins' death.

Appellant's first contention is that the contract was not proved, and in connection therewith it is urged that members of a family cannot recover from each other for services rendered by one to the other unless there is an express contract, citing *Griffith v. Robertson,* 73 Kan. 666, 671, 85 Pac. 748, and other cases, and that Amanda Jenkins stood in *loco parentis* to the claimant. It may be remarked that the court instructed on the theory of express contract. However, it should be noted that the claimant was never adopted by either of the Jenkins, did not adopt their name, left their home when he attained his majority, and did not return for some twelve years thereafter. Ordinarily, a person cannot stand in *loco parentis* to an adult who is not physically or mentally incapacitated (46 C. J. 1335). Mrs. Jenkins did not stand in that relation to claimant. Further, the evidence shows that after he left, in 1888, claimant was never a part of the Jenkins household. As bearing upon this phase of the matter, see *Ensey, Ex'r, v. Hines,* 30 Kan. 704, 2 Pac. 861. The most that can be said favorably to the executor is that claimant's course of conduct toward Mr. and Mrs. Jenkins indicated an appreciation of their kindnesses to him during his childhood. Had

he been the child or adopted child of the Jenkins, he owed them no support under the situation here existing (*In re Erickson*, 104 Kan. 521, 523, 180 Pac. 263). It is then contended that owing to the fact that Mrs. Jenkins and claimant stood in the relation of in *loco parentis* to each other, claimant could only recover by virtue of an express contract, proved by clear, positive and direct evidence.

There have been a goodly number of cases wherein claimants have sought to recover *quantum meruit* for services rendered decedents, or have sought to have enforced specifically contracts either to make wills or to give specific property, the consideration of which was the performance of such services. A great many of these cases are noted in *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665, and as is said therein: "No good purpose would be served in analyzing each of these cases in detail. To cite them is deemed sufficient." (p. 261.)

Many of the cases referred to pertain to situations much different than exist here. Some involve principles of equity which are absent here. Some arise in suits in the nature of specific performance, a few are appeals from allowance or disallowance of claims in the probate court. From all of them it may be said that although certain principles are laid down by which all claims of somewhat analogous character are to be determined, to a certain extent each must be decided in view of the facts and circumstances of the particular case.

As has been stated, the court submitted the controversy under instructions that claimant performed the services and furnished goods and supplies at the special instance and request of Mrs. Jenkins by virtue of an oral contract between the claimant and Mrs. Jenkins, which was in substance that if he would take care of her during her lifetime and perform services and other work for her, she would pay him for such services and supplies. The claimant did not object or except to such instructions nor request any other or different instruction, so we must assume he was satisfied with the court's interpretation of his theory of the matter. The instructions laid down the law of the case, and it will be determined accordingly.

Was the contract proved? It appears that there is no evidence as to why claimant returned from Oklahoma in 1900 and commenced working at the Jenkins place, and no direct evidence as to what arrangement he had with either Mr. or Mrs. Jenkins. That

the claimant performed services over a great period of years, and that he furnished Mrs. Jenkins with many supplies and did what he alleges he agreed to do, is not seriously disputed, the objection going more to the proposition that he failed to prove he did so by reason of any contract he had with Mrs. Jenkins. In examining this objection, we take note that the claimant is incompetent to testify to any communication or transaction had personally by him with Mrs. Jenkins, and that proof may therefore be difficult to adduce. However, he had that burden. Did he sustain it? The evidence showed that in 1907, when the question of provision for claimant was discussed between Mrs. Jenkins and claimant's wife, Mrs. Jenkins stated that Mr. Jenkins had asked her to give claimant the 200-acre farm; that she had sold the farm but expected to make it good; and she stated to numerous other witnesses that she wanted claimant paid for all that he had done. It is clearly shown that Mrs. Jenkins intended that claimant should be paid. There is likewise testimony that the claimant paid rent and taxes on the real estate he occupied.

It was not necessary that the contract be proved by direct testimony—it could be established by circumstances. In discussing a contract between parent and child, it was said in *Griffith v. Robertson*, supra:

"It is not essential that a formal offer and acceptance, in writing or otherwise, be shown. In the absence of more direct evidence the fact may be established by circumstances. An express contract exists whenever there is a mutual meeting of the minds upon any contractual proposition. The essential contractual proposition in this case is: Were the services in question to be paid for? What was the mutual understanding of these parties upon this subject? This was a proper question for a jury, and that tribunal has answered that the parties intended that the services should be paid for." (p. 671.)

Here there was abundant testimony with reference to the services rendered and, to a lesser extent, as to supplies furnished, such as butter, eggs, garden products in season, meat, etc., a showing that as the years elapsed such services and supplies were not paid for, the declarations of the decedent that she wanted the claimant paid, her statement during her last illness that she wanted him to have what she had in the bank, although the evidence does not disclose what it was or its value, and this, taken into consideration with her statement that she had sold the farm but expected to make it good, warranted the jury, which had an opportunity to observe the witnesses, their manner of testifying, their candor and their interest

or lack of it, in concluding that it was understood and agreed between Mrs. Jenkins and the claimant that he should furnish her care, services and supplies and be paid therefor. And the court, with similar opportunities, approved the jury's verdict. In our opinion the claimant sustained the burden of proof.

Whether the verdict was excessive presents a more difficult question. While the statement of the claim might be interpreted to mean that claimant was to have the equivalent of the 200-acre farm which was sold for $20,000, under the court's instructions, of which claimant did not and does not now complain, the matter was submitted on the proposition that he should recover only the reasonable value of the services rendered and supplies furnished. While we recognize the fact that it is impossible to evaluate exactly the services rendered and the goods and supplies furnished, there is no evidence which warrants or justifies the amount of $14,000 returned by the jury in its verdict. We are inclined to believe that the amount was predicated on the value of the 200-acre farm sold, and in this wise: Value of 160 acres bequeathed at $25 per acre, $4,000, plus the cost of the automobile given claimant by Mrs. Jenkins, $737, plus the amount allowed, $14,000, or $18,737, which approximates the amount for which the 200 acres sold. Under the theory on which the claim was submitted, and under the instructions, this was not correct. There being no reasonable basis on which the verdict rests, and a lack of sufficient evidence to warrant its amount, it should have been set aside.

In view of our conclusions that the contract was sufficiently proved, no good purpose would be served by granting a new trial as to this phase of the controversy. If a new trial is granted, it would pertain only to the amount of the recovery. There is no showing that the verdict as returned by the jury was the result of any prejudice, and we have refused to approve it only for the reason that under the evidence it is excessive. The period during which the services were performed and goods and supplies furnished covered many years and, as above indicated, we recognize the fact that it is impossible to now put any exact figure of value thereon. We have examined the record to ascertain whether an amount can be fixed which will not be subject to criticism as being excessive and have concluded to offer plaintiff the option of accepting a judgment for that amount, and in event of his refusal, to grant a new trial on the question of the amount of recovery only. *(Mo. Pac. Rly. Co. v.*

*Dwyer*, 36 Kan. 58, 74, 12 Pac. 352, and *Wiggins v. Missouri-K.-T. Rld. Co.*, 128 Kan. 32, 38, 276 Pac. 63, and cases cited therein.)

If the plaintiff will consent, a judgment of $5,000 may be entered in his favor; otherwise a new trial, limited as noted, will be granted, and the case is remanded for further proceedings consistent herewith.

HARVEY, J. (dissenting):

I am unable to see in the record in this case evidence sufficient to support a judgment for the claimant in any sum. The hearing was had on a claim filed in the estate of Mrs. Jenkins, deceased, to recover "for services rendered and goods and supplies furnished." It is tantamount to an action which might have been brought against Mrs. Jenkins in her lifetime on account for services rendered and goods and supplies furnished. Whether brought as an action in her lifetime, or as a claim against her estate, for the plaintiff or claimant to recover, it is essential that he show what specific services were rendered, what goods and supplies were furnished, the reasonable or fair value thereof, and that he was not paid for them. The only services rendered shown by the evidence are that the claimant took Mrs. Jenkins on several trips where she wanted to go in his automobile—perhaps the one she gave to him. Some of those trips were about town, and at least one to Arkansas. The time consumed in those trips, or the reasonable value of such services, is not shown, nor is there any specific showing they were not paid for. With respect to goods and supplies furnished, there is evidence that, extending over a number of years, the claimant had taken butter, eggs, meat and products from the garden to Mrs. Jenkins. No effort was made to show, with any degree of certainty, the quantity of such goods and supplies, nor their value. Neither was there any specific showing that they had not been paid for. Certainly much of this was furnished at a time when the statute of limitations would run upon a claim for payment, unless there existed a running mutual account, and there is no contention that such an account existed.

There is evidence in the record tending to show that Mrs. Jenkins at various time, and Mr. Jenkins shortly before his death, talked of making gifts to the claimant. Such evidence has no value in this case except as it tends to show the history of the relation of the parties, for two reasons: (1) Claimant does not predicate his

claim upon them, and (2) from the evidence they were nothing more than contemplated gifts; they were not contractual in the sense that a certain or ascertainable sum was to be left to claimant if he did certain things.

As to the testimony that Mrs. Jenkins at various times made remarks to her friends of her good opinion of the claimant and his wife, and that she expected to see that they were well provided for, it may be noted that she did a very good job of that when, by her will, she left to them the use for life of a 165-acre farm adjoining Arcadia. As to the remarks she made to her friends during her last illness respecting what she wanted plaintiff to have or do with her bank account, we note that at the time of her last illness she had her banker prepare and she executed a power of attorney authorizing claimant to draw checks on her account, under which claimant drew checks in payment of bills she owed while she was sick. This indicates that she executed all the papers relating to her bank account which she cared to execute. It is my judgment that the claim on which recovery is sought has no substantial merit.

HUTCHISON, J., not sitting.